1
2
3
4
5
6
7

8                          U.S. DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11   CAMMERIN K. BOYD,                       No. C 03-3391    JL

12              Plaintiff,

13        v.                                 **SUMMARY JUDGMENT**
                                             **(granting Docket # 49)**
14   CITY OF OAKLAND, ET AL.,

15              Defendants.
     _____/
16
                                **Table of Contents**
17

18   I.   The declaration of Marylon M. Boyd, Plaintiff's primary evidence, is inadmissible,
          with the exception of paragraph five's description of Cammerin Boyd as "extremely
19        upset," which is admissible under the state of mind exception to the hearsay rule in
          FRE 803(3), and paragraph six, which is partially admissible to the extent that it
20        states Ms. Boyd's personal observations, rather than her legal conclusions and
          assertions made without personal knowledge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
21
          A.   Paragraph one is inadmissible because it is merely Plaintiff's counsel's
22             assertion of personal knowledge and competency to testify, which are
               insufficient to render the declaration admissible. . . . . . . . . . . . . . . . . . . . . . 7
23
          B.   Paragraph two is inadmissible, as Ms. Boyd lacks personal knowledge and is
24             not competent to testify to the matters therein. . . . . . . . . . . . . . . . . . . . . . . . 8
25        C.   Paragraphs three and four are inadmissible. They present the hearsay
               statements of four witnesses, as relayed by Ms. Boyd, who did not witness
26             the events and who spoke with the witnesses well after the events ended
               which renders this information outside the scope of Ms. Boyd's personal
27             knowledge and, therefore, her competency to testify. . . . . . . . . . . . . . . . . . . 8
28

U.S. District Court
For the Northern District of California

D.    Paragraph five of the Boyd Declaration, containing Cammerin Boyd's statements to his mother/attorney, is inadmissible hearsay under FRE 802, and no hearsay exceptions apply to render it otherwise admissible. . . . . . . . 9

    1.    Cammerin Boyd's statements to his mother/attorney are not admissible as an excited utterance because the lengthy, logical, and coherent nature of the statements tend to show that his reflective faculties were not dominated by nervous excitement—which renders the statements inadmissible as lacking the spontaneity required of an excited utterance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    2.    Cammerin Boyd's statements to Ms. Boyd via telephone are not admissible as a present sense impression because of the lack of corroboration, the presence of two motives to distort, and lack of spontaneity—all of which are indicators of unreliability. . . . . . . . . . 19

    3.    Only the description of Cammerin Boyd as "extremely upset" is admissible under FRE 803(3), as it reflects his then-current emotional state of mind rather than his memory or belief about the cause of that state of mind. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    4.    Cammerin Boyd's statements to his mother/attorney are not admissible under FRE 807 because the statements lack particularized guarantees of trustworthiness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

E.    The portions of paragraph six that contain Ms. Boyd's personal observations of Cammerin Boyd's condition are admissible; however, her legal conclusions and assertions made without personal knowledge are inadmissible under FRCP 56(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

II.    Plaintiff's death and his attorney's subsequent failure to substitute his Estate as Plaintiff do not warrant dismissal under Federal Civil Procedure Rule 25 because Defendants did not meet that rule's procedural requirements; however, because the failure to substitute raises the issue of proper plaintiff under Rule 17, the Court hereby resolves the issue under Rule 21 by ordering that Mr. Boyd's Estate be substituted as Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

III.    Defendants' motion for summary judgment is granted as to all of Plaintiff's claims, given Plaintiff's lack of evidence as to all elements, or key elements, of each claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

A.    Summary judgment is granted as to Plaintiff's disability discrimination claim under ADA Title II and Rehabilitation Act § 504, because Plaintiff failed to provide evidence to establish any requisite elements, including that Defendant Officers excluded Mr. Boyd from the benefits of a public program or service, or otherwise discriminated against him. . . . . . . . . . . . . . . . . . 33

B.    Defendant's motion for summary judgment is granted as to Plaintiff's §1983 claim against Defendant Officers, because although Plaintiff provided admissible evidence to establish that the officers acted under color of law in ticketing Mr. Boyd and towing his car, Plaintiff failed to produce evidence to establish that Defendant Officers violated Mr. Boyd's rights. . . . . . . . . . . 36

C.    Summary judgment is granted as to all of Plaintiff's § 1983 *Monell* claims against the Oakland Police Department and City of Oakland because Plaintiff

U.S. District Court
For the Northern District of California

failed to establish the existence of a policy, custom, pattern or practice—and because Plaintiff failed to provide admissible evidence to establish that Defendant Officers violated Mr. Boyd's rights. . . . . . . . . . . . . . . . . . . . . . . 41

D.    Defendants' motion for summary judgment is granted as to Plaintiff's Conspiracy claim because Plaintiff provided neither argument nor evidence to defeat summary judgment on this claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

E.    Summary judgment is granted as to Plaintiff's Negligence claim because Plaintiff failed to provide any evidence or argument to defeat summary judgment on this claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

F.    Summary judgment is granted as to Plaintiff's claim of Assault and Battery because Plaintiff provided no evidence to raise a genuine issue of material fact to defeat summary judgment on this claim. . . . . . . . . . . . . . . . . . . . . . 47

G.    Summary judgment is granted as to Plaintiff's claims of Intentional and Negligent Infliction of Emotional Distress because California's survivor statute bars a deceased plaintiff's successor in a lawsuit from recovering emotional distress damages, and because Plaintiff failed to provide admissible evidence to establish a genuine issue of material fact as to the requisite elements.   . 48

H.    Summary judgment is granted as to Plaintiff's cause of action for False Arrest and False Imprisonment because Plaintiff provided no admissible evidence to demonstrate a genuine issue of material fact sufficient to defeat summary judgment on this claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

**Introduction**

Plaintiff Cammerin Boyd filed suit on July 21, 2003, against Defendants Oakland Police Officers Sena and McQuinn, the Oakland Police Department, and the City of Oakland, regarding an alleged incident on July 23, 2002. All parties consented to this Court's jurisdiction, as provided by 28 U.S.C. § 636©) and Civil Local Rule 73.  Plaintiff was killed in an incident with the San Francisco Police Department on May 5, 2004. Plaintiff's counsel Marylon M. Boyd is also his mother. After Plaintiff's untimely death, Ms. Boyd was appointed administrator of his estate. Cammerin Boyd remains the named plaintiff. Before the Court is the Defendants' motion for summary judgment. The Court finds that Plaintiff fails to offer sufficient admissible evidence to defeat summary judgment, and grants Defendants' motion.

U.S. District Court
For the Northern District of California

U.S. District Court

For the Northern District of California

**Factual Background**

The parties have not agreed upon a set of undisputed facts.[1] Plaintiff's Complaint alleges facts, which Defendants deny. Plaintiff's Complaint alleges that on July 23, 2002, Mr. Boyd, a twenty-nine year old African American male who was a double amputee, was legally driving his late model Mercedes Benz on Birch Street in Oakland.  According to the Plaintiff, Defendant Officers Sena and McQuinn of the Oakland Police Department stopped Mr. Boyd's car. Plaintiff asserts that the officers approached with their guns drawn and, shouting racial epithets, they dragged him from his car. The officers then allegedly made Mr. Boyd walk without his prosthetic devices, removed his clothing from the waist down, and conducted a body cavity search of Mr. Boyd in the public street.  Plaintiff alleges that Defendant Officers then placed Mr. Boyd in handcuffs and forcefully threw him in the back of their patrol car, where he waited for 30 minutes while they searched his car. Plaintiff asserts that the officers then falsely ticketed Mr. Boyd and towed his car, leaving him at the scene.

**Procedural Background**

Plaintiff filed suit on July 21, 2003.  This Court construes Plaintiff's Complaint to allege seven causes of action, including: (1) violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, (2) violation of civil rights under 42 U.S.C. Section 1983, including a *Monell* claim against the Department and City, (3) conspiracy, (4) negligence, (5) assault and battery, (6) intentional and negligent infliction of emotional distress, (7) false arrest and false imprisonment.

Defendants City of Oakland, Oakland Police Department, and Officers Sena and McQuinn, filed their Answer to Plaintiff's Complaint on March 11, 2004, denying all of Plaintiff's claims and asserting affirmative defenses.

---

[1] Defendants assert that "there is no admissible evidence to support any of the plaintiff's claims. Consequently, the City defendants are at a loss as to how to compile a joint statement of undisputed facts with citations to admissible evidence, as called for in this Court's Standing Order." Defendant's Motion for Summary Judgment 4 n.1.

**U.S. District Court**
For the Northern District of California

1     The Court has given Plaintiff ample opportunity to plead the case. At Plaintiff's

2 request, the Court twice continued the matter in order to allow Plaintiff more time to

3 conduct discovery. The Court ordered a third continuance after the death of the Plaintiff,

4 Mr. Boyd.[2]  On August 12, 2004, the Court denied Defendants' motion to quash Plaintiff's

5 discovery request regarding the observations of a witness to the incident in San Francisco

6 on May 5, 2004, in which the Plaintiff was shot and killed. Although a conspiracy between

7 the Oakland and San Francisco Police Departments was not plead in the Plaintiff's

8 Complaint, the Court allowed Plaintiff's discovery request.  On the other hand, Plaintiff has

9 repeatedly failed to produce initial disclosures. On March 25, 2005, the Court ordered

10 Plaintiff to do so or face sanctions.

11     On February 4, 2006, Defendants moved for summary judgment, or, in the

12 alternative, partial summary judgment. In an untimely memorandum of points and

13 authorities in opposition to summary judgment, Plaintiff asserted that summary judgment is

14 not appropriate because triable issues of material fact exist in this case. Plaintiff's

15 evidentiary support for this assertion is discussed below. A hearing on Defendant's motion

16 for summary judgment was held on March 22, 2006.

17     The Court grants the Defendants' motion for summary judgment against all of the

18 Plaintiff's claims, as discussed below.

19                                    **ANALYSIS**

20 **I.    The declaration of Marylon M. Boyd, Plaintiff's primary evidence, is
         inadmissible, with the exception of paragraph five's description of Cammerin**

21 **Boyd as "extremely upset," which is admissible under the state of mind
         exception to the hearsay rule in FRE 803(3), and paragraph six, which is**

22 **partially admissible to the extent that it states Ms. Boyd's personal
         observations, rather than her legal conclusions and assertions made without**

23 **personal knowledge.**

24     The plaintiff bears the burden of proof on all of the essential elements of his or her

25 claim. *Southern Cal. Gas Co. v. Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). A trial court

26 can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v.*

27

28     [2]   The November 19, 2003 and June 15, 2005 case management conferences were continued to allow
Plaintiff more time for discovery. Following the Plaintiff's death, a continuance was also ordered on May 5, 2004.

1   *Bank of America*, 285 F.3d 764 (9th Cir. 2002). "Authentication is a 'condition precedent to

2   admissibility' . . . We have repeatedly held that unauthenticated documents cannot be

3   considered in a motion for summary judgment." *Id.* (citing to FRE 901(a)).

4          Federal Rule of Civil Procedure 56(e) requires that affidavits submitted in support of

5   a motion for summary judgment must: (1) be made on the personal knowledge of an affiant

6   who is competent to testify to the matters stated therein, (2) must state facts that would be

7   admissible in evidence, and (3) if the affidavit refers to any document or item, a sworn or

8   certified copy of that document or item must be attached to the affidavit. Fed.R.Civ.P.

9   56(e); *Orr*, 285 F.3d at 774 n.9; William W. Schwarzer et al., Cal. Prac. Guide: Fed. Civ.

10  Pro. Before Trial (2004) § 14:161. This rule applies to declarations as well as affidavits.

11  Schwarzer, *supra*, at § 14:161 (citing 28 U.S.C. § 1746, "[d]eclarations made under penalty

12  of perjury have the same effect as an affidavit").

13         A declarant must show personal knowledge and competency to testify by the facts

14  stated. *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations on

15  information and belief are entitled to no weight where declarant lacks personal knowledge).

16  The matters must be known to the declarant personally, as distinguished from matters of

17  opinion or hearsay. *Id.* A declarant's mere assertions that he or she possesses personal

18  knowledge and competency to testify are not sufficient. *Barthelemy v. Air Lines Pilots*

19  *Ass'n*, 897 F.2d 999 (9th Cir. 1990). A declarant must show personal knowledge and

20  competency "affirmatively," under Rule 56(e), for example, by "the nature of the declarant's

21  position and nature of participation in matter." *Id.*

22         A court must determine admissibility by applying the Federal Rules of Evidence. *Orr*

23  *v. Bank of America*, 285 F.3d 764, 778 (9th Cir. 2002) (unauthenticated documents cannot

24  be considered).

25         Plaintiff's primary evidence that the Defendant Officers violated Mr. Boyd's rights is a

26  declaration by Marylon M. Boyd, who is Cammerin Boyd's attorney, mother and

27  administrator of his estate. *See* Plaintiff's Memorandum of Points and Authorities in

28

1  Opposition to Summary Judgment (hereafter "Pl. Opp. to SJ" 6: 21-26, 7: 1-5; *See also*

2  Declaration of Marylon M. Boyd in Opposition to Defendant's Motion for Summary

3  Judgment (hereafter "Boyd Declaration"). The Boyd Declaration is attached to Plaintiff's

4  untimely memorandum in opposition to summary judgment.[3]

5

6  **A.    Paragraph one is inadmissible because it is merely Plaintiff's counsel's assertion of personal knowledge and competency to testify, which are**

7  **insufficient to render the declaration admissible.**

8  Paragraph one of the Boyd Declaration is a statement by Ms. Boyd that she is an

9  attorney and has personal knowledge of the matters stated therein, and if called upon, can

10  testify competently to all matters attested to. Boyd Declaration ¶ 1, at 1: 18-21[4]. The

11  Defendants do not object to this paragraph. *See* Defendants' Objections to Plaintiff's

12  Evidence re: Motion for Summary Judgment (hereafter "Def. Objections").

13  A declarant must show personal knowledge and competency to testify by the facts

14  stated. *Bank Melli*, 58 F.3d at 1412. The matters must be known to the declarant

15  personally, as distinguished from matters of opinion or hearsay. *Id.* Here, Ms. Boyd in

16  paragraph one of her declaration does not show personal knowledge or competency to

17  testify. Ms. Boyd's mere assertions of personal knowledge and competency to testify are

18  insufficient to establish these assertions to be true. Thus she fails to demonstrate that

19  either paragraph one or the contents of the Boyd Declaration overall are admissible.

20

21  _____

[3] Northern District Local Rules 7-3(b)-(c) require that opposition pleadings be filed no later than 21 days

22  before a scheduled hearing on the matter. Northern District Local Rules 7-3(b)-(c). Under Local Rule 56-1, the court may *sua sponte* reschedule the hearing to allow the moving party to respond to late-filed opposition papers. Northern District Local Rule 56-1. *See also* Schwarzer, *supra*, at § 14: 99.

23

24  The hearing was originally set for February 8, 2006. Plaintiff's opposition was thus due on January 18, 2006. The Court received it on January 26, 2006. The Defendants object to the admission of the Boyd Declaration on the grounds that it is untimely. Def. Objections at 2: 1-7.

25

26  Upon receipt of the untimely opposition, pursuant to Local Rule 56-1, this Court *sua sponte* rescheduled the hearing to March 2, 2006, to allow the movant time to reply. Defendants submitted two reply briefs. Given the

27  Court's authority under Local Rule 56-1 and Defendants' ample opportunity for reply, this Court finds the issue of untimeliness to be moot.

28

[4] The line spacing in both the Plaintiff's and Defendants' filings does not align with the line spacing on the pleading paper, thus all line numbers cited here are approximations.

**U.S. District Court**
For the Northern District of California

1

**B.     Paragraph two is inadmissible, as Ms. Boyd lacks personal knowledge and is not competent to testify to the matters therein.**

2

3

Paragraph two of the Boyd Declaration states:

4

5

6

7

8

9

10

> The only evidence Defendants presented in support of their motion is the declaration of their Counsel, Maria Bee, stating that Plaintiff did not produce witnesses Lorenzo Walker, Antonio Avales, Brandon Jackson, and Kellie Blumin for deposition. Kellie Blumin is with the Public Defender's office and Defendant did not notice her deposition nor subpoena her for deposition. She was not present at the scene of the incident. She is knowledgeable about the number of prior complaints of unreasonable force and other complaints against defendants McQuinn and Sena. With respect to other witnesses, I have appeared in this action informing the Court of the difficulty of producing witnesses to testify against police officers because of their understandable fear of retaliation from the police, particularly in the neighborhood where the incident occurred.

11

Boyd Declaration ¶ 2, at 1: 21-26, 2: 1-5.

12    Defendants object to the declaration as hearsay under Federal Rules of Evidence

13    (hereafter "FRE") 801 and 802, regarding the portion of paragraph two discussing Kellie

14    Blumin—where she works, that she was not at the scene, and what she allegedly knows

15    about prior complaints against Defendant Officers. Def. Objections at 2: 8-9.

16    The objected-to portion of paragraph two is not based on the personal knowledge of

17    Ms. Boyd, thus she is not competent to testify to it. Rather, it is hearsay at best. As no

18    hearsay exception applies here, these statements in paragraph two are not admissible as

19    evidence in support of Plaintiff's claims.

20

**C.     Paragraphs three and four are inadmissible. They present the hearsay statements of four witnesses, as relayed by Ms. Boyd, who did not witness the events and who spoke with the witnesses well after the events ended which renders this information outside the scope of Ms. Boyd's personal knowledge and, therefore, her competency to testify.**

21

22

23    Paragraphs three and four of the Boyd Declaration offer Ms. Boyd's account of the

24    statements of four individuals who Ms. Boyd asserts were witnesses to the Defendant

25    Officers' alleged misconduct, and whom Ms. Boyd later located and interviewed. She

26    claims they are afraid to come forward as witnesses for fear of retaliation by the police.

27    Boyd Declaration ¶ 3-4, at 2: 6-25, 3: 1-5.

28

**U.S. District Court**
For the Northern District of California

1    Defendants object to paragraph 3, lines 2:6-16 as hearsay under FRE 801 and 802,

2  and Plaintiff's statement that she interviewed the four witnesses named therein "within

3  minutes of the incident occurring," as, by her own admission, she did not arrive at the

4  scene until 5:15 p.m. Def. Objections at 12-16. Defendants also object on the grounds that

5  Ms. Boyd has no personal knowledge of the time that the incident occurred. *Id.* at 2: 16.

6    Paragraphs three and four are based not on the personal knowledge of Ms. Boyd,

7  but on the hearsay statements of the four alleged witnesses. Ms. Boyd is not competent to

8  testify as to this evidence. There is no basis for a hearsay exception here, so these

9  statements are not admissible. Therefore, paragraphs three and four are not admissible as

10  evidence in support of the Plaintiff's claims.

11    **D.    Paragraph five of the Boyd Declaration, containing Cammerin Boyd's
        statements to his mother/attorney, is inadmissible hearsay under FRE
12        802, and no hearsay exceptions apply to render it otherwise admissible.**

13

14    "The Confrontation Clause limits the conditions under which hearsay evidence can

15  be admitted, but it does not bar such evidence completely." *People of Territory of Guam v.
    Ignacio*, 10 F.3d 608, 612 (9th Cir. 1993). Hearsay evidence which is sufficiently reliable,

16  either because it falls within a 'firmly rooted hearsay exception' or is supported by

17  'particularized guarantees of trustworthiness,' does not violate the Confrontation Clause."

18  *Id.* (quoting *Idaho v. Wright*, 497 U.S. 805, 816 (1990)).

19
        **1.    Cammerin Boyd's statements to his mother/attorney are not
20            admissible as an excited utterance because the lengthy, logical,
            and coherent nature of the statements tends to show that his
21            reflective faculties were not dominated by nervous
            excitement—which renders the statements inadmissible as
22            lacking the spontaneity required of an excited utterance.**

23    FRE 803(2) provides that an excited utterance is not excluded by the hearsay rule

24  and is defined as "[a] statement relating to a startling event or condition made while the

25  declarant was under the stress of excitement caused by the event or condition."

26  Fed.R.Evid. 803(2). The elements required to establish an excited utterance include: (1) an

27  occurrence or event sufficiently startling to render normal reflective thought processes

28  inoperative, (2) a statement that is a spontaneous reaction to the occurrence or event and

    not the result of reflective thought, which (3) relates to the occurrence or event. *U.S. v.*

**U.S. District Court**

For the Northern District of California

1  *Alarcon-Simi*, 300 F.3d 1172, 1175 (9th Cir. 2002) (citing *U.S. v. McLennan*, 563 F.2d 943,

2  948 (9th Cir. 1977)); FRE 803(2). "The excited utterance exception is 'firmly rooted'...."

3  *Ignacio*, 10 F.3d at 615.

4        The Ninth Circuit stated the principle behind the admission of a spontaneous

5  statement as follows: "[U]nder certain external circumstances of physical or mental shock, a

6  stress of nervous excitement may be produced in a spectator which stills the reflective

7  faculties and removes their control, so the utterance which then occurs is . . . spontaneous

8  and sincere...." *U.S. v. Alarcon-Simi*, supra, at p. 1175 (quoting Wigmore, Evidence § 1745,

9  at 193 (Chadbourn rev. 1976)); *See also U.S. v. Napier*, 518 F.2d 316, 318 (9th Cir. 1975)

10 (quoting 6 Wigmore, Evidence § 1747, at 135 (3d ed. 1940)).

11       The U.S. Supreme Court has held that an excited utterance is reliable and thus

12 admissible when it "has been offered in a moment of excitement--without the opportunity to

13 reflect on the consequences of one's exclamation." *White v. Illinois*, 502 U.S. 346, 355-56

14 (1992). However, "[m]erely being 'upset' clearly does not meet the standard for admissibility

15 under Evid.R. 803(2) because it does not show that [the declarant's] statements were not

16 the result of reflective thought." *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993).

17       "When a hearsay statement is offered under this exception, the trial court must make

18 a preliminary fact determination that the declarant was so excited or distraught at the

19 moment of the utterance that he did not reflect (or have an opportunity to reflect) on what

20 he was saying." *U.S. v. McLennan*, supra, at p. 948.

21       To determine whether a declarant was under the stress of excitement when he

22 made the statement, courts consider not only the lapse of time between the event and the

23 statement (whether the declarant had time to think about his actions), but also the apparent

24 state of mind of the declarant, the nature of the startling event, the declarant's age (child

25 victims of sexual abuse are generally allowed more time between the event and the

26 statement), and whether the declarant had a motive to fabricate. *See People of Territory of*

27 *Guam v. Ignacio*, supra, at pp. 614-15; *U.S. v. Sherlock*, 962 F.2d 1349, 1365 (9th Cir.

28 1989); *U.S. v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995).

U.S. District Court
For the Northern District of California

1    Courts in Hawaii, Utah, and Idaho have held that "lengthy, narrative statements are

2    not admissible as excited utterances." *State v. Machado*, 127 P.3d 941, 947-48 (2006);

3    *West Valley City v. Hutto*, 5 P.3d 1, 4 (Utah Ct.App. 2000); *State v. Hansen*, 133 Idaho

4    323, 326 (Idaho Ct. App. 1999)).

5    *Machado* involved an incident of domestic violence in which the victim's live-in

6    boyfriend allegedly grabbed, choked, stepped on and threatened to kill the victim,

7    brandishing a knife at her. *Machado*, 127 P.3d at 943-44. The victim screamed, struggled

8    and managed to escape the apartment. *Id.* A neighbor heard the commotion and called

9    911. *Id.* at 943. The victim also called 911 and the police arrived within ten minutes. *Id.* at

10   944. The victim spoke with a police officer, to whom she detailed the struggle and death

11   threats. *Id.* 943. At trial, she recanted, leaving the prosecution to put the police officer on

12   the stand to testify as to her statements regarding the attack and threats to kill her. *Id.* at

13   946-47.

14   The officer testified to the victim's statement as follows:

15   Approximately at 10:00 p.m., [the defendant] arrived home
     and [the victim] attempted to lock him out of the residence.
16   He then attempted to gain entry by removing a screen on the
     kitchen window. Seeing this, she allowed him to enter the
17   residence. Once within the kitchen area, [the defendant]
     grabbed her from behind, holding her in a--what she said
18   was a choke hold with his right arm. There was a struggle,
     he held her with her--okay, after he got her in a choke hold,
19   he stated--her words were that he stated that, "Don't fuck
     with me." There was a struggle. He grabbed her with his left
20   hand and pulled on her hair, and wrestled her to the ground.
     While they were struggling on the ground, she had bit him on
21   the left--on his left arm. After they were on the ground, she
     somehow got out of his hold. He then stepped on her head.
22   And he reached for a steak knife within the dish rack there
     on the counter. After obtaining the steak knife, he stated that
23   "Don't fuck with me, I'll kill you." He then placed the knife on
     the dish rack. She then kicked him in the groin area, at which
24   time he released her. She stood up, attempting to leave the
     kitchen area. He grabbed her from behind, spun her around,
25   and grabbed her by the throat. There was a slight struggle.
     She got up. She got loose from that and contacted the
26   police.

27   *Machado*, 127 P.3d at 943-44.

28

U.S. District Court

For the Northern District of California

1    Hawaii's Intermediate Court of Appeals, which first reviewed the case, affirmed the

2    trial court, holding that the statements were admissible as an excited utterance, based on

3    the neighbor's testimony as to the occurrence of the startling event, the police officer's

4    testimony that the victim was "pretty hysterical or pretty emotional" when he took her

5    statements, and the court's assessment that her statements "related to" the startling event.

6    *Id.* at 945.

7    In its review of the case, the Hawaii Supreme Court noted that "[o]ther courts have

8    held that lengthy, narrative statements are not admissible as excited utterances" and

9    quoted from a Utah case as follows.

10    [I]n *West Valley City v. Hutto*, 5 P.3d 1, 4 (Utah Ct.App. 2000),
      the Utah Court of Appeals distinguished between an excited

11    utterance and the ongoing discourse of an excited individual,
      holding that it was error to allow a police officer to recount her

12    entire 30 to 45 minute interview with the alleged domestic
      abuse victim, rather than limiting admission of the officer's

13    testimony to particularized utterances of the victim. In reaching
      this conclusion, that court noted that the excited utterance

14    exception is limited to "truly spontaneous outbursts."
      *Machado*, 127 P.3d at 947-48.

15    The court in *West Valley City v. Hutto*, 5 P.3d 1, 4 (Utah Ct.App. 2000), *supra*, also

16
     stated that "[t]he classic example of an excited utterance is a witness's exact recollection of

17    the declarant's spontaneous 'sound bite'--an uncoached blurting out--made while the

18
     declarant observed the exciting event or closely thereafter." *Hutto*, 5 P.3d at 4. Examples

19    given included "You're a dead man," "Daddy shot Mommy. Mommy is dead," "Oh my god,"

20    "It won't turn, Mom" (referring to a steering wheel), "Oh, God... It wasn't your fault," and

21    "That son-of-a-bitch cut me." *Id.* (citations omitted).[5]   *Id.*

22    The court in *Hutto* "emphasized that not every statement made by an excited person

23    is an excited utterance for purposes of the hearsay rule." *Id.* at 6-7. "Emotionalism in

24

25

26    _____

          [5] A sampling of excited utterance case law from the Ninth Circuit of the U.S. Federal Courts revealed the

27    following statements admitted under FRE 803(2): "He killed me, he killed me." *U.S. v. Napier*, 518 F.2d 316, 317
      (9th Cir. 1975);  "[My] pee pee hurt[s]." *People of Territory of Guam v. Ignacio*, 10 F.3d 608, 614 (9th Cir. 1993);

28    "He got my baton, Sarge." *U.S. v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995);  A description of a robber, including
      that he had tattoos and the direction in which he fled. *People of Territory of Guam v. Cepeda*, 69 F.3d 369, 371
      (9th Cir. 1995);  "What's going to happen to my wife? What are you going to do?" *U.S. v. Torrejon*, 81 F.3d 171,
      1996 WL 137091 at 1 (9th Cir. 1996) (West unpublished opinion).

U.S. District Court
For the Northern District of California

1   recounting a distressing event hours, days, or even years later is not uncommon, but it

2   does not make the recounting an excited utterance." *Id.* at 7 n.8.

3       The Hawaii Supreme Court in *Machado* also quoted from an Idaho case as follows.

4           In another domestic dispute case, *State v. Hansen*, 133 Idaho 323
            (Idaho Ct.App. 1999), the Idaho Court of Appeal found that the trial
5           court had erred in admitting a victim's statements to a police officer
            which "were not an exclamation or burst of words in sudden
6           reaction to a startling occurrence[,] but a lengthy recitation of the
            circumstances surrounding the fight [with her boyfriend] and a
7           request to press charges."

8   *Machado*, 127 P.3d at 948 (citing *State v. Hansen*, 133 Idaho 323, 326 (Idaho Ct.

9   App. 1999)).

10      In *Hansen*, the declarant made a lengthy statement to police ten minutes after an

11  alleged incident of domestic abuse by her boyfriend. *State v. Hansen*, 133 Idaho 323, 326

12  (Idaho Ct. App. 1999). The declarant described herself to the police detective to whom she

13  made the statement as being "madder than she had ever been." *Id.* at 327. The Idaho

14  Court of Appeal found that the declarant's "anger . . . could have provided a motivation to

15  fabricate or exaggerate in [the declarant's] version of events." *Id.* at 326. It held that "[t]he

16  ten-minute interval between the conclusion of [the declarant's] fight with [her boyfriend] and

17  her arrival at the police station was sufficient time for reflective thought and fabrication." *Id.*[6]

18  The court in *Hansen* further held that "[the declarant's] protracted narrative to [the police

19  officer] . . . cannot be viewed as the sort of spontaneous reaction that carries indicia of

20  reliability contemplated by" the excited utterance rule. *Id.*

21      The court in *Machado* applied the reasoning employed by the Utah and Idaho courts

22  to find that the victim's extensive statement, relayed through the police officer, was not a

23  "'truly spontaneous outburst' . . . [r]ather, it was a specific and inclusive rendition of the

24  circumstances leading up to the incident and the incident itself." *Id.* The court in *Machado*

25  compared the victim's extensive recital with the brief statements in *State v. Moore*, 82

26      ────────────
    [6] Considering the lapse of ten minutes in its assessment of the declarant's statement, the court in *Hansen*
27  noted its ruling in *State v. Burton*, 115 Idaho 1154, 1156 (Ct. App. 1989), in which it found a five-minute lapse of
    time between an alleged shooting and the statement to be too long to allow for the statement's admission as an
28  excited utterance. *State v. Hansen*, 133 Idaho 323, 325 (1999) (quoting *State v. Burton*, 115 Idaho 1154, 1156
    (Ct. App. 1989)). The court in *Burton* noted that "the rationale underlying the excited utterance exception is the
    'special reliability which is regarded as furnished by the excitement suspending the declarant's powers of reflection
    and fabrication.'" *Id.* (quoting same).

U.S. District Court
For the Northern District of California

1    Hawai'i 202 (1996). In *Moore*, the court held that a wife's statements to police implicating

2    her husband were admissible as an excited utterance. *Machado*, 127 P.3d at 948. The wife

3    in *Moore* had been shot by her husband, who pulled up behind a police car with his injured

4    wife as his passenger. *Id.* While awaiting an ambulance, the injured wife said, "He shot

5    me," "He's a good man[,] I told him I was leaving him," "He's distraught," and "Keep him

6    away from me . . . get him away from me." *Id.*

7         The court in *Machado* noted that the declarant's statements in *Moore* were "brief

8    and disjointed remarks" that "lacked coherence." *Id.* It further noted that the declarant in

9    *Moore* had been shot five times, her assailant was still nearby, she had a collapsed lung,

10   was perspiring and her voice was barely audible. *Id.*  By comparison, the statements from

11   the victim in *Machado* "involved a lengthy narrative of the events of an entire evening"

12   which the court found to be "detailed, logical, and coherent." The court in *Machado*

13   concluded that the nature and the circumstances of the statements made by the victim

14   there did not justify the conclusion that she was still "under the stress of excitement." *Id.*

15   Thus, it held that the trial court erred in admitting the victim's statement as an excited

16   utterance. *Id.*

17        In the instant case, paragraph five of the Boyd Declaration offers Ms. Boyd's

18   account of statements made to her via telephone by Cammerin Boyd, as follows.

19              The incident began on July 23, 2002, at or about 3:50 to 4:00 p.m. on
               Birch Street at 102nd Street in Oakland. At about 4:45 I received a
20             telephone call from my son Cammerin Boyd. He was extremely
               upset. He told me that Officers Sena and McQuinn without any
21             justification or basis for stopping him, nearly crashed into his car by
               driving at a high rate of speed and turning directly towards him
22             blocking him and forcing him to stop.

23              He told me that Sena and McQuinn jumped out of their car and ran
               up to his car with their guns drawn telling him to "get the fuck out the
24             car now". As he opened the door one of the officers grabbed his arm
               and pulled him out of the car. Both of them were screaming
25             profanities at him and telling him they were going to blow his "fucking
               brains out". He said the officers called him a "nigger" and repeatedly
26             asked him if he had any drugs on him.

27              Even though he told the officers over and over that he did not have
               any drugs and that he was disabled and that he wore prosthesis [sic]
28             on both legs, Sena and McQuinn forced him to walk to the back of
               their car while hand cuffed [sic]. While pressed up against the back of
               their car one of the officers pulled down his pants and his underwear

U.S. District Court
For the Northern District of California

1  exposing his nude buttocks and scrotum parts of his body to the plane [sic] view of the public. They also exposed his prostheses.
2
3  When no drugs were found they forcefully threw him into the back seat of their car and then proceeded to search his car. They left him handcuffed in the back seat of their car for over an [sic] half hour. When they did not find any contraband in his car they called a tow truck to tow away his car. When they found out that he was not on parol [sic] they issued a citation falsely stating that he did not have a drivers [sic] license, even though his drivers [sic] license was in his wallet and on his person. They also falsely cited him for an expired registration when his registration was current. They took his wallet and left him stranded at the scene even though he was mobility impaired and had no money.
4
5
6
7
8
9  Boyd Declaration ¶ 5, at 3: 6-25, 4: 1-4 (attached to Pl. Obj. to SJ).

10      Plaintiff asks the Court to admit these statements by Mr. Boyd under FRE 803(2) as
11  an excited utterance. Pl. Opp. to SJ at 7:15.  Defendants contend these statements should
12  be excluded on the grounds that they do not meet the requirements of FRE 803(2), and are
13  therefore inadmissible hearsay under FRE 801 and 802; inadmissible multiple hearsay
14  under FRE 805; and unduly prejudicial under FRE 403. Def. Objections at 2: 17-21.

15      Here, the admissibility of paragraph five of the Boyd Declaration as an excited
16  utterance under FRE 803(2) hinges on the analysis of the second element: whether Mr.
17  Boyd was so excited or distraught at the moment of the utterance that he did not reflect, or
18  have an opportunity to reflect, on what he was saying. *McLennan*, 563 F.2d at 948.

19      The instant case is similar in key respects to *State v. Machado*, 127 P.3d 941
20  (2006), *supra*. In *Machado*, the declarant, a domestic violence victim, made an extensive
21  narrative statement which that court found to be "detailed, logical, and coherent," and which
22  the court contrasted with admissible excited utterances from another case, which were
23  "brief and disjointed." *Machado*, 127 P.3d at 948. Like the statements in *Machado*,
24  Cammerin Boyd's statement is an extensive narrative that is detailed, logical, and coherent,
25  rather than brief and disjointed. Like the victim in *Machado*—and unlike the wife who had
26  been shot five times in *Moore*—Mr. Boyd was not in a life threatening situation when he
27  made his statement, and there is no evidence to show that he was physically injured. Like
28  the court in *Machado*, this Court finds that the nature and the circumstances of the

U.S. District Court
For the Northern District of California

1  statements made by Cammerin Boyd do not justify the conclusion that he was "under the

2  stress of excitement."

3       The reasoning of the court in *West Valley City v. Hutto*, 5 P.3d 1, 4 (Utah Ct.App.

4  2000), *supra*, is instructive as well. The court in *Hutto* distinguished between an excited

5  utterance and the ongoing discourse of an excited individual. *Hutto*, 5P.3d at 4. It stated

6  that "[t]he classic example of an excited utterance is a witness's exact recollection of the

7  declarant's spontaneous 'sound bite'--an uncoached blurting out" such as, "You're a dead

8  man." *Id.* at 4. Emphasizing that "the excited utterance exception is limited to 'truly

9  spontaneous outbursts,'" the court ruled that "it was error to allow a police officer to recount

10  her entire 30 to 45 minute interview with the alleged domestic abuse victim, rather than

11  limiting admission of the officer's testimony to particularized utterances of the victim." *Id.*

12       Here, it is clear that Mr. Boyd's recital is quite different from the examples of "truly

13  spontaneous outbursts" described by the court in *Hutto*, as well as the examples from the

14  Ninth Circuit, set forth above. Mr. Boyd's statement , recounted in Ms. Boyd's declaration,

15  is a lengthy, chronologically ordered recitation of his version of events. In contrast to the

16  examples of admissible excited utterances, which on average consist of a few words, Mr.

17  Boyd's statement totals more than 380 words. Although Mr. Boyd was described as being

18  "extremely upset" when he made the declaration to his mother/attorney, the declaration

19  itself demonstrates the distinction between an excited person and an excited utterance. To

20  characterize it in the language of the court in *Hutto*, Mr. Boyd's declaration does not

21  represent an "uncoached blurting out," but rather the "ongoing discourse of an excited

22  person."

23       Further still, Ms. Boyd's recital of Cammerin Boyd's declaration is not actually in the

24  first person. It is not the "witness's exact recollection of the declarant's spontaneous 'sound

25  bite'" as an excited utterance is defined under *Hutto*. Rather, it appears to be Ms. Boyd's

26  recounting of everything Cammerin Boyd said to her by telephone. In this way, the

27  purported declaration in the instant case is quite similar to the police officer's testimony

28  recounting a 30-45 minute interview with the alleged victim in *Hutto*, which that court found

had been erroneously admitted as an excited utterance.

1      Under *Hutto*, this Court finds that it would be error to allow Ms. Boyd to recite her

2   recollection of Cammerin Boyd's lengthy, organized statement as an excited utterance. In

3   other words, Cammerin Boyd's statement to his mother/attorney is not admissible as an

4   excited utterance because its lengthy, organized nature shows that Mr. Boyd was not

5   making a spontaneous outburst, and because that statement appears to be a recounting of

6   an extended conversation with an excited person, rather than a witness' exact recollection

7   of the declarant's spontaneous outburst.

8      This Court reaches the same result in the instant case as the court in *State v.*

9   *Hansen*, 133 Idaho 323, 326 (1999), *supra*. The court in *Hansen* ruled that the declarant's

10   statement, alleging domestic abuse by her boyfriend, was inadmissible as an excited

11   utterance because the declarant was angry at her boyfriend, which provided a motive to lie;

12   the ten-minute lapse of time between the end of the alleged incident and the statement

13   allowed "sufficient time for reflective thought and fabrication;" and the statement itself was a

14   "protracted narrative" rather than "an exclamation or a sudden burst of words in sudden

15   reaction to a startling occurrence." *Id.* at 326-27.

16      In applying the decision in *Hansen* to the instant case, the Court turns first to an

17   examination of the evidence as to the lapse of time between the alleged incident and Mr.

18   Boyd's statements to his mother/attorney.  Ms. Boyd asserts in her motion in opposition to

19   summary judgment that "Cammerin Boyd spoke to Marylon Boyd immediately after he was

20   strip searched, within five minutes." Pl. Opp. To SJ at 7: 1-3. However, under FRE 602, a

21   witness must have personal knowledge of the subject matter attested to. Fed.R.Evid. 602.

22   Ms. Boyd was admittedly not present at the alleged event and therefore has no personal

23   knowledge of when it ended. Her assertion is  thus inadmissible under FRE 602.

24      The Plaintiff's other offers of evidence yield the following information. First, Mr.

25   Boyd's declaration states that he was pulled over by police "at or about 3:50 or 4:00 p.m."

26   Boyd Declaration ¶ 5.  Second, the police traffic citation *appears that it may* list the time as

27   4:25 p.m.[7]  Plaintiff's Exhibit A.  Third, the Towed Vehicle Report lists the time as 4:40 p.m.

28

---

[7]  For the sake of argument, this Court assumes *without so finding* that the police traffic citation reads "16:25." As discussed above, the citation is difficult to read.

U.S. District Court
For the Northern District of California

1   Plaintiff's Exhibit B.  Fourth, Ms. Boyd reported a 4:45 p.m. phone call from Mr. Boyd.

2   Boyd Declaration ¶ 5.

3          The dispositive inquiry is whether, within the time frame alleged, Mr. Boyd had the

4   opportunity for reflection. Cammerin Boyd's declaration gives the sequence of the alleged

5   events as follows: he was pulled over, dragged from his car, questioned about drugs, and

6   made to walk to the squad car, where he was strip searched. He was then placed in the

7   squad car by himself for 30 minutes while the officers searched his car. Finally, he was

8   issued a traffic citation, his car was ordered towed, and the police left the scene. Given this

9   order of alleged events, the "16:25" on the traffic citation (Exhibit A) indicates the time when

10  the citation was written, which was at the conclusion of the officer's alleged manhandling of

11  Mr. Boyd. This leaves 20 minutes between the end of the alleged incident and Mr. Boyd's

12  declaration via telephone at 4:45 p.m.

13         The putative sequence of events raises other questions as well. According to the

14  declaration, the police ordered Mr. Boyd's car to be towed at the end of their interaction.

15  Does "16:40" on the Towing Report indicate the time at which the tow truck driver arrived at

16  the scene and began to write a report, or does it indicate the time at which the tow truck

17  driver finished loading the car onto the truck, just before driving away? What was Mr. Boyd

18  doing while the tow truck driver arrived and loaded Mr. Boyd's car onto the tow truck? Was

19  Mr. Boyd sitting on the curb waiting? In addition, did the 30 minutes that Mr. Boyd spent in

20  the squad car allow him an opportunity for reflection?

21         The answers to these questions cannot be found in Plaintiff's offer of evidence.

22  Based on the comparison of Plaintiff's Exhibits A and B with paragraph five of the Boyd

23  Declaration, there appears to have been at least a 20-minute lapse. At a minimum there

24  was sufficient time for the tow truck to arrive, the driver to complete the paperwork, and,

25  presumably, to load Mr. Boyd's car onto the truck and tow it away. Further, for 30 minutes,

26  Mr. Boyd allegedly sat by himself in the back of the police squad car.  Based on its

27  examination of the available evidence, this Court finds that Mr. Boyd had ample opportunity

28  for reflection.

**U.S. District Court**
For the Northern District of California

1        Thus, in the instant case, the facts surrounding Mr. Boyd's statements to his

2  mother/attorney are quite similar to the facts in *Hansen*, *supra*. Like the declarant in

3  *Hansen* who was angry with her boyfriend, Cammerin Boyd was described as being "angry"

4  with the police, which gave him a motive to lie. Here, the lapse of time between the alleged

5  incident and the statement appears to have been 20 minutes or more—which is longer than

6  the 10 minutes in *Hansen*, and the 5 minutes in *Burton* (cited in *Hansen*) which were found

7  to have permitted time for reflection and fabrication. Finally, like the declarant's statements

8  in *Hansen*, Mr. Boyd's statements were a "protracted narrative" rather than "an exclamation

9  or a sudden burst of words in sudden reaction to a startling occurrence."

10        Thus, under *Hansen*, as under *Machado* and *Hutto*, this Court concludes that Mr.

11  Boyd's statements to his mother were not made while he was under the stress of

12  excitement such that his reflective capacity was stilled, and therefore, Mr. Boyd's

13  statements to his mother/attorney are not admissible as an excited utterance under FRE

14  803(2).

15        The discussion of the nature of the statement itself—its length, coherence, and level

16  of detail—as an indicator of whether the declarant was "under the stress of excitement"

17  may be an issue of first impression in the Ninth Circuit. However, this approach is fully

18  consistent with the principles behind the excited utterance hearsay exception as analyzed

19  in Ninth Circuit opinions.

20                **2.**      **Cammerin Boyd's statements to Ms. Boyd via telephone are not**

21                        **admissible as a present sense impression because of the lack of**
                        **corroboration, the presence of two motives to distort, and lack of**

22                        **spontaneity—all of which are indicators of unreliability.**

23        Federal Rule of Evidence (hereafter "FRE") 803(1) provides that a present sense

24  impression is an exception to the hearsay rule, and is defined as "[a] statement describing

25  or explaining an event or condition made while the declarant was perceiving the event or

26  condition, or immediately thereafter." Fed.R.Evid. 803(1).

27

28                Under the Confrontation Clause, hearsay is admissible only
                "if it bears adequate 'indicia of reliability.' Reliability can be
                inferred without more in a case where the evidence falls
                within a firmly rooted hearsay exception . . . [or upon] a

U.S. District Court
For the Northern District of California

1

2

3   showing of particularized guarantees of trustworthiness." . . . [T]here is no case law holding that the present sense impression exception to the rule against hearsay is 'firmly rooted.'[8] Therefore, the focus is on whether there is a particularized guarantee of trustworthiness with respect to this statement.

4

5   *U.S. v. Murillo*, 288 F.3d 1126, 1137 (9th Cir. 2002) (citations omitted).

6       "There is no mechanical test for determining reliability nor a prescribed list of

7   reliability elements . . . and 'courts have considerable leeway in their consideration of

8   appropriate factors.' ...The reliability of the out-of-court statements cannot be established

9   'by bootstrapping on the trustworthiness of other evidence.'" *Whelchel v. Washington*, 232

10  F.3d 1197, 1204 (9th Cir. 2000) (internal citations omitted).

11      Corroboration, motive to lie, and contemporaneity or spontaneity are all recognized

12  indicia of reliability. *See Barker v. Morris*, 761 F.2d 1396, 1402 (9th Cir. 1985)

13  (corroboration is an indicium of reliability); *U.S. v. Murillo*, 288 F.3d 1126, 1138 (9th Cir.

14  2002) (motive to lie is an indicium of reliability); *U.S. v. Ponticelli*, 622 F.2d 985, 992 (9th

15  Cir. 1980) (the contemplation of litigation is a motive to lie), *cert. denied*, 449 U.S. 1016

16  (1980), *overruled on other grounds*, *U.S. v. DeBright*, 730 F.2d 1255, 1259 (9th Cir. 1984)

17  (en banc); *State v. Hansen*, 133 Idaho 323, 326 (1999) (anger is a motive to lie); *Ponticelli*,

18  761 F.2d at 1402, *supra*, (citing *Dutton v. Evans*, 400 U.S. 74, 89 (1970))

19  (contemporaneity/spontaneity is an indicium of reliability).

20      In the instant case, given that the present sense impression is not a "firmly rooted"

21  hearsay exception, per *U.S. v. Murillo*, 288 F.3d 1126, 1137 (9th Cir. 2002), the Court must

22  assess whether Mr. Boyd's statement to Ms. Boyd, his mother and attorney, had

23  "particularized guarantees of trustworthiness." Based on the facts of the instant case, and

24  given courts' "considerable leeway in their consideration of appropriate factors," per

25  *Whelchel v. Washington*, 232 F.3d 1197, 1204 (9th Cir. 2000), this Court will apply the

26  relevant indicia of reliability to assess whether Cammerin Boyd's statements contain

27

28  ───────────────
    8 *See also People of Territory of Guam v. Ignacio*, 10 F.3d 608, 614 (9th Cir. 1993) (stating that "[n]either the Supreme Court nor this court has ruled as to whether or not the present sense impression is a 'firmly rooted' exception to the rule against hearsay").

1
2

particularized guarantees of trustworthiness sufficient to render the statements admissible

as a hearsay exception.

3

        **(I)**        **The lack of corroboration of Cammerin Boyd's version of**
                              **events weighs against finding his declaration to be reliable.**

4
5

    "Corroboration is a recognized indicium of reliability..." *Barker v. Morris*, 761 F.2d

6

1396, 1402 (9th Cir. 1985) (citing *U.S. v. Garner*, 574 F.2d 1141, 1144 (4th Cir. 1978)

7

(holding that testimony of another witness is an important corroborating factor). In *Barker*,

8

one Bill Pifer, after learning that he would soon die of throat cancer, came forward and told

9

police of a double homicide that he had witnessed. *Id.* at 1398. Pifer led police to the

10

remains of the victims and identified the murderers as members of a motorcycle gang to

11

which he belonged. *Id.*

12

    Pifer died before trial, but had testified under oath and on videotape. *Id.* The

13

testimony was corroborated by the victims' remains, the testimony of co-defendants, and

14

the admissions of other co-defendants. *Id.* at 1402. The court in *Barker* concluded that

15

"[t]he reliability of Pifer's testimony is strongly supported by the fact of independent

16

corroboration for each of its essential elements . . . by physical evidence discovered at the

17

burial site and by the testimony of both [co-defendants] Green and Moran." *Id.* at 1402.

18

After considering other factors relevant to the facts in that case, the court in *Barker* held

19

that Pifer's videotaped testimony bore adequate indicia of reliability and was thus

20

admissible. *Id.* at 1403.

21

    In the instant case, the Plaintiff offers copies of two documents as corroboration for

22

the version of events in Cammerin Boyd's declaration.  Plaintiff's Exhibit A appears to be a

23

photocopy of a citation issued to Cammerin Boyd. *See* Pl. Opp. to SJ, Exhibit A. Ms. Boyd

24

asserts that Plaintiff's Exhibit A "corroborates Cammerin's statement that he was stopped

25

by Sena and McQuinn." Boyd Declaration at 4: 23-24.  The copy of the citation provided by

26

the Plaintiff is  difficult to read; it may list "23 Jul 02" as the date, and "16:25" as the time.

27

*See* Pl. Opp. to SJ, Exhibit A. For the sake of argument, the Court will assume, without so

28

finding, that it does so read.  Plaintiff's Exhibit B is entitled "Towed Vehicle Report," which

clearly lists the date as "23 Jul 02" and the time as "16:40." *See* Pl. Opp. to SJ, Exhibit B.

U.S. District Court
For the Northern District of California

1   Each of these documents supports Cammerin Boyd's assertion that he was ticketed and

2   his car was towed between approximately 4:25 and 4:40 p.m. on July 23, 2002. However,

3   neither document provides any support for Mr. Boyd's version of his encounter with the

4   police, and thus they do not provide substantive corroboration of Mr. Boyd's declaration.

5       Ms. Boyd next asserts that there are witnesses who can corroborate Mr. Boyd's

6   version of events. Boyd Declaration ¶ 2–4. Ms. Boyd requested that she be allowed to

7   testify as to the statements made to her by alleged witnesses, who, she asserts, have not

8   come forward due to fear of reprisal by the police. Boyd Declaration ¶ 2–4. Ms. Boyd

9   declares that she interviewed three such witnesses "within minutes of the incident

10  occurring." *Id.* at ¶ 4. However, she also says that she arrived at the scene of the alleged

11  incident at 5:15 p.m., half an hour after she purportedly received the phone call from Mr.

12  Boyd, informing her of the alleged incident. *Id.* at ¶ 5. There is no evidence as to how long

13  after the alleged incident ended Cammerin Boyd called his mother. Thus, assuming that

14  Ms. Boyd's 5:15 arrival time in paragraph five is accurate, Ms. Boyd could not have spoken

15  with the witnesses "within minutes of the incident." Under Federal Rule of Evidence 802,

16  Ms. Boyd's request to testify as to their statements to her is barred by the hearsay rule. No

17  hearsay exception applies to the statements made by the witnesses to render them

18  otherwise admissible as evidence. Therefore, they do not corroborate Cammerin Boyd's

19  declaration.

20      Ms. Boyd also asserts that the deposition testimony of Chief Word corroborates

21  Cammerin Boyd's version of events on July 23, 2002. Pl. Opp. to SJ at 5: 1-3. Ms. Boyd

22  cites page 71, lines 5–12 and page 72, lines 1–12 of Exhibit D, Chief Word's deposition. *Id.*

23  However, the statements on page 71, lines 5–12 of that deposition constitute Chief Word's

24  answer to a question about a hypothetical set of facts posed by Ms. Boyd. As such, these

25  statements do not provide evidence to corroborate Cammerin Boyd's declaration.

26      Next, Chief Word's statements on page 72, lines 1–12 are part of a discussion of a

27  newspaper article in which Chief Word was quoted as stating "I don't think the public

28  understands when we say strip search. They think we took all his clothes off in the street,

    and that's not what happened," in reference to the Defendant Officers' stop of Cammerin

U.S. District Court
For the Northern District of California

1  Boyd on July 21, 2002. Exhibit D 72: 1-7. Ms. Boyd then asked "What did you base that

2  information on to make that quote?" *Id.* at 8-9. Chief Word replied, "My discussions with my

3  staff. And what they told me actually occurred was not some full-blown stripping off of

4  clothes and searching the body." *Id.* at 10-12.

5      This testimony shows that Mr. Boyd was searched in some way by the Defendant

6  Officers on July 23, 2002. To this extent, Chief Word's deposition corroborates Cammerin

7  Boyd's declaration that a search of some sort did occur. However, while Chief Word could

8  not remember the details of what he was told about the search, he did recall that his staff

9  specifically told him that Mr. Boyd was *not* subjected to the public removal of both his outer

10  clothing and undergarments. To this extent, Chief Word's deposition not only fails to

11  corroborate Cammerin Boyd's declaration, it actually refutes the substance of Mr. Boyd's

12  declaration alleging that he was stripped naked below the waist and subjected to a body

13  cavity search in public.

14      Finally, Ms. Boyd asserts that a copy of the Plaintiff's government tort claim, filed

15  with the City of Oakland, corroborates Cammerin Boyd's version of events. Pl. Opp. to SJ

16  at 5: 1-3. This document contains Mr. Boyd's allegations against the City of Oakland in

17  relation to the alleged incident on July 23, 2002, with no evidence in support of those

18  claims. *See* Pl. Opp to SJ, Exhibit C. These are the same allegations set forth in the case

19  at bar, the repetition of which does not provide admissible evidence to corroborate Mr.

20  Boyd's declaration.

21      In sum, the Plaintiff's admissible evidence to corroborate Cammerin Boyd's

22  declaration consists of Exhibits A and B, and the declaration of Chief Word. These offers of

23  proof establish that Mr. Boyd was searched and cited, and his car towed. However, none of

24  this evidence tends to establish that the encounter with the police happened in the abusive,

25  discriminatory manner that Mr. Boyd asserted. Plaintiff's other offers of proof also fail to

26  corroborate Mr. Boyd's declaration: not one of the purported witnesses to the alleged

27  incident was produced despite ample time for discovery, and the claim filed with the City of

28  Oakland was a repetition of the allegations made in this case and was entirely lacking in

proof thereof.

1      The corroborating evidence in the instant case is substantially less than that in

2 *Barker v. Morris*, 761 F.2d 1396, 1402 (9th Cir. 1985), *supra*, in which the declarant's

3 statements were found to be reliable based on the victims' remains, the testimony of co-

4 defendants, and the admissions of other co-defendants. *Barker v. Morris*, 761 F.2d 1396,

5 1402 (9th Cir. 1985), *supra*.

6      In contrast, here the corroborating evidence is scant. That which is admissible does

7 not corroborate the substance of Mr. Boyd's declaration. Plaintiff fails to provide any

8 corroborating evidence to support Cammerin Boyd's version of events on July 23, 2002.

9 Given that corroboration is an indicator of reliability, the lack of corroboration for Mr. Boyd's

10 declaration weighs against finding that declaration to be reliable, and thus it is inadmissible

11 as a present sense impression.

12               **(ii)**     **The presence of two motives for Cammerin Boyd to**

                           **fabricate or exaggerate weighs against finding his**

13                            **declaration to be reliable.**

14      Motive or incentive to lie is an indicium of reliability. *U.S. v. Ponticelli*, 622 F.2d 985,

15 992 (9th Cir. 1980), *cert. denied*, 449 U.S. 1016 (1980), *overruled on other grounds*, *U.S. v.*

16 *DeBright*, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc). *See also U.S. v. Murillo*, 288 F.3d

17 1126, 1138 (9th Cir. 2002). In *Ponticelli*, the declarant made his declaration to his attorney,

18 which the appellate court concluded "implies that [the declarant] was considering the legal

19 significance of his declarations at the time he made them." *Ponticelli*, 622 F.2d at 991-92.

20 The fact that the declarant in this case made his statements while perhaps contemplating

21 litigation constitutes a motive to lie, which the Court weighs against finding the declaration

22 to be reliable. *Id.*

23      In *State v. Hansen*, 133 Idaho 323, 326 (1999), *supra*, the declarant was described

24 as being "madder than she had ever been" upon reporting an alleged incident of domestic

25 abuse. *State v. Hansen*, 133 Idaho 323, 326-27 (1999), *supra*.[9] The court in *Hansen* found

26                          

                  [9] In *Hansen*, an excited utterance case, the court found anger to be a motive to lie. *State v. Hansen*, 133

27 Idaho 323, 326 (1999). In *Ponticelli*, the court stated that FRE 803(1), governing present sense impressions, is a hearsay exception that "overlaps substantially with [FRE] 803(2), governing excited utterances." *U.S. v.*

28 *Ponticelli*, 622 F.2d 985, 992 (9th Cir. 1980), *cert. denied*, 449 U.S. 1016 (1980), *overruled on other grounds*, *U.S. v. DeBright*, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc). Given the recognized overlap between excited utterances and present sense impressions, it is reasonable to infer that a motive to lie in an excited utterance case

U.S. District Court

For the Northern District of California

U.S. District Court
For the Northern District of California

1    that the declarant's "anger . . . could have provided a motivation to fabricate or exaggerate

2    in [the declarant's] version of events." *Id.* at 326.

3        In the instant case, Cammerin Boyd, like the declarant in *Ponticelli*, made his

4    declaration to his attorney, Ms. Boyd, who is also his mother. This raises the possibility that

5    this declaration was made in contemplation of litigation, which, like the declarant in

6    *Ponticelli*, gives Mr. Boyd a motive to lie, which weighs in favor of finding his declaration to

7    be unreliable.[10] In addition, like the declarant in *Hansen*, Cammerin Boyd was "angry" at the

8    police and thus had a motive to fabricate or exaggerate his version of events. Like the court

9    in *Hansen*, this Court finds that anger as a motive to lie weighs against Mr. Boyd's

10   declaration to be reliable.

11       **(iii)    The evidence regarding the lapse of time between the
12               alleged incident and the declaration, plus the extensive
                 narrative nature of the declaration, undermine the notion
13               that Cammerin Boyd's statements were spontaneous and
                 made without an opportunity for reflection, and weigh in
                 favor of finding his declaration to be unreliable.**

14

15       A court may consider spontaneity or contemporaneity as an indicium of reliability.

16   *U.S. v. Ponticelli*, 761 F.2d 1396, 1402 (9th Cir. 1980) (citing *Dutton v. Evans*, 400 U.S. 74,

17   89 (1970)), *cert. denied*, 449 U.S. 1016 (1980), *overruled on other grounds*, *U.S. v.*

18   *DeBright*, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc). A present sense impression must

19   be "nearly contemporaneous with the incident described and made with little chance for

20   reflection." *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995).

21       "The underlying rationale of the present sense impression exception is that
         substantial contemporaneity of event and statement minimizes *unreliability*
22       due to [the declarant's] defective recollection or conscious fabrication." . . .
         The present sense impression exception is rightfully limited to statements
23       made while a declarant perceives an event or immediately thereafter, and
         we decline to expand it to cover a declarant's relatively recent memories.
24       The opportunity for strategic modification undercuts the *reliability* that
         spontaneity insures."

25

26   *U.S. v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004) (emphasis added).

27

28   _____

also qualifies as a motive to lie in a present sense impression case.
        [10]   Mr. Boyd had filed a previous lawsuit on May 20, 2002, in which his mother acted as his attorney. See
*Boyd v. Alameda County*, 2005 WL 2171870 (N.D.Cal., 2005) (slip copy).

**U.S. District Court**
For the Northern District of California

1    In deciding admissibility of a declaration as a present sense impression, where the

2    lapse of time between the event and the declaration is not established by the attorney who

3    seeks to introduce the evidence, a court is entitled to conclude that the declarant had

4    sufficient time for reflection. *Ponticelli*, 622 F.2d at 992, *supra*. In addition to viewing the

5    contemplation of litigation as a motive to lie, the court in *Ponticelli* also placed weight on the

6    fact that the declarant's attorney failed to establish the lapse of time between the

7    declarant's arrest (the event upon which the contemporaneity assessment was based) and

8    the declaration. *Id.* Thus, it held that "the trial court did not abuse its discretion in

9    concluding that [the declarant] had a chance for reflection and misrepresentation in making

10   the proffered statements." *Id.*

11       The court in *Ponticelli* found the presence of a motive to lie (the contemplation of

12   litigation), coupled with the opportunity to do so (given that the lapse of time between event

13   and declaration was not established), formed a sufficient basis upon which to find the

14   declarant's statements to be unreliable and thus inadmissible. *Id.*

15       Here, as in *Ponticelli*, Plaintiff's attorney did not proffer admissible evidence to

16   establish the lapse of time between the event and the statements. As established above,

17   Ms. Boyd's assertion that it was "within five minutes" is inadmissible because Ms. Boyd was

18   not present at the alleged incident and does not have personal knowledge as to when it

19   ended. Where the lapse of time is not established, as in *Ponticelli*, it is reasonable for this

20   Court to conclude that Mr. Boyd, like Mr. Ponticelli, "had a chance for reflection and

21   misrepresentation in making the proffered statements." *Ponticelli*, 622 F.2d at 992. Further,

22   the Court's examination of the evidence, as established above, reveals a lapse of roughly

23   20 minutes between the end of the alleged incident and the declaration. Whether the lapse

24   of time is unknown or whether it was 20 minutes, either provides sufficient basis for this

25   Court to conclude that Mr. Boyd had sufficient time for reflection, and therefore, that his

26   statements were not spontaneous. Hence, these statements are neither reliable nor

27   admissible.

28       This conclusion is further supported by analysis of the nature of the statements,

     similar to that applied to the excited utterance hearsay analysis above. The nature of Mr.

1  Boyd's declaration shows that it was not a statement made spontaneously and without

2  reflection. Rather than being a burst of words describing what he was presently perceiving

3  or had perceived immediately beforehand, Mr. Boyd's declaration consists of a lengthy,

4  detailed, narrative account. The coherence and structure of this account shows that Mr.

5  Boyd "was reflecting on the event" rather than spontaneously reacting to a present sensory

6  experience. The nature of Cammerin Boyd's statement as an extensive reflective narrative

7  weighs against finding his declaration to be spontaneous—an element without which the

8  declaration cannot be deemed reliable.

9        Analysis under recognized indicia of reliability, including corroboration, motive to lie,

10  and spontaneity, reveals that each indicator weighs *against* finding Cammerin Boyd's

11  statements to his mother, who is also his attorney, to be reliable for the purposes of

12  admission as a present sense impression. Mr. Boyd's declaration lacked corroboration of

13  his version of events. Mr. Boyd had two motives to lie - the contemplation of litigation and

14  anger at the police. The lapse of time between the alleged altercation with the police and

15  Mr. Boyd's declaration was not established by his attorney and appears to have allowed

16  him an opportunity for reflection. This opportunity for reflection negates the requisite

17  spontaneity—a conclusion that is reinforced by the nature of his statement, which was a

18  lengthy, orderly narrative account, rather than a burst of words blurting out what he was

19  presently perceiving. Having assessed the statement by the relevant indicia of reliability,

20  this Court finds that Cammerin Boyd's statements are unreliable and thus are inadmissible

21  under the present sense impression exception to the hearsay rule.

22              **3.    Only the description of Cammerin Boyd as "extremely upset" is**
                        **admissible under FRE 803(3), as it reflects his then-current**
23                      **emotional state of mind rather than his memory or belief about**
                        **the cause of that state of mind.**
24

25        FRE 803(3) provides for an exception to the hearsay rule for "[a] statement of a

26  declarant's then existing state of mind, emotion, sensation, or physical condition . . . but not

27  including a statement of memory or belief to prove the fact remembered or believed unless

28  it relates to the . . . declarant's will."  Fed.R.Evid. 803(3).

          The state-of-mind hearsay exception does not permit the witness to relate
          any of the declarant's statements as to why he held the particular state of

**U.S. District Court**
For the Northern District of California

1  mind, or what he might have believed that would have induced the state of
2  mind. If the reservation in the text of the rule is to have any effect, it must
   be understood to narrowly limit those admissible statements to
3  declarations of condition-"I'm scared"-and not belief-"I'm scared because
   [someone] threatened me."

4  *U.S. v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987) (emphasis omitted).

5      In the instant case, nearly all of Cammerin Boyd's declaration to his mother and

6  attorney relates to his memory or belief as to why he was in the described condition. As

7  such, these statements are inadmissible under FRE 803(3). The only admissible portion is

8  the description that he was "extremely upset," because this describes his then-current

9  emotional state.

10              **4.    Cammerin Boyd's statements to his mother/attorney are not**
                       **admissible under FRE 807 because the statements lack**
11                     **particularized guarantees of trustworthiness.**

12     FRE 807, the "catchall" exception to the hearsay rule, provides that,

13         A statement not specifically covered by Rule 803 or 804 but
           having equivalent circumstantial guarantees of
14         trustworthiness, is not excluded by the hearsay rule, if the
           court determines that (A) the statement is offered as evidence
15         of a material fact; (B) the statement is more probative on the
           point for which it is offered than any other evidence which the
16         proponent can procure through reasonable efforts; and ©) the
           general purposes of these rules and the interests of justice will
17         best be served by the admission of the statement into
           evidence.
18

19     Fed.R.Evid. 807.

20     The "circumstantial guarantees of trustworthiness" required by Rule 807 are not

21  present where the statement of the declarant is "plainly self-serving and no corroboration

22  [is] available." *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1316 (9th Cir. 1985). As established

23  above, the Court finds Cammerin Boyd's statements to be inadmissible under FRE 803(1),

24  the present sense impression exception to the hearsay rule, because the statements

25  lacked particularized guarantees of trustworthiness, due to a lack of corroboration and the

26  presence of motives to lie, including the contemplation of litigation. As Mr. Boyd's

27  statements lack "particularized guarantees of trustworthiness" under FRE 803(1), so do

28  they lack "circumstantial guarantees of trustworthiness" under FRE 807. To put it another

way, like the statements ruled inadmissible in *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1316

U.S. District Court
For the Northern District of California

1  (9th Cir. 1986), *supra*, Mr. Boyd's statements are self serving (e.g. made in contemplation

2  of litigation, as established above) and lack corroboration. Thus, this Court finds Mr. Boyd's

3  statements to be inadmissible under FRE 807, the catchall exception to the hearsay rule.

4      **E.    The portions of paragraph six that contain Ms. Boyd's personal
             observations of Cammerin Boyd's condition are admissible; However,
5            her legal conclusions and assertions made without personal knowledge
             are inadmissible under FRCP 56(e).**
6

7      Paragraph six of the Boyd Declaration offers a brief recounting of Cammerin Boyd's

8  version of events. Boyd Declaration ¶ 6 at 4: 5-13. The above analysis of the admissibility

9  of Mr. Boyd's statements under specified exceptions to the hearsay rule applies here as

10  well. The noteworthy difference between the statements relayed in paragraph five to Ms.

11  Boyd via telephone, and those conveyed in paragraph six to Ms. Boyd in person, is that in

12  the latter case, the time lapse between the alleged incident and the statements is even

13  longer. This adds more weight against admissibility. The Court therefore finds Cammerin

14  Boyd's statements in paragraph six to be inadmissible hearsay under FRE 802. No hearsay

15  exception applies to render them otherwise admissible.

16      Paragraph six of the Boyd Declaration also offers Ms. Boyd's account of her

17  observations upon arriving at Cammerin Boyd's location at 5:15 p.m. on July 23, 2002. *Id.*

18  As established above, legal conclusions are inadmissible as are matters not within the

19  personal knowledge of the declarant. FRCP 56(e); *Orr v. Bank of America*, 285 F.3d 764

20  (9th Cir. 2002). Ms. Boyd's descriptions such as "excessive force" and "assault" constitute

21  legal conclusions. In addition, Ms. Boyd's statements that the marks observed on

22  Cammerin Boyd's wrists were caused by "the handcuffs . . . placed too tightly" and that he

23  walked in great pain "from having to walk without assistive devices" fall outside of the scope

24  of her personal knowledge, as she was admittedly not present to have observed the

25  alleged causal incidents events. Thus, while Ms. Boyd's personal observations of

26  Cammerin Boyd's condition are admissible—including the time at which she arrived at his

27  location, and that he was emotionally distraught, tears streamed down his face, and he was

28  visibly shaken, upset and angry—her legal conclusions and commentary about the reasons

1    for Cammerin Boyd's emotional condition are not admissible.  Moreover, these

2    observations are insufficient to defeat summary judgment.

3

4    **II.     Plaintiff's death and his attorney's subsequent failure to substitute his Estate as Plaintiff do not warrant dismissal under Federal Civil Procedure Rule 25 because Defendants did not meet that rule's procedural requirements; however, because the failure to substitute raises the issue of proper plaintiff under Rule 17, the Court hereby resolves the issue under Rule 21 by ordering that Mr. Boyd's Estate be substituted as Plaintiff.**

5

6

7         The case at bar was filed on July 21, 2003. Cammerin Boyd was killed in an

8    unrelated incident on May 5, 2004. The Plaintiff's attorney and mother, Ms. Marylon Boyd,

9    was subsequently named as the administrator and executor of Cammerin Boyd's estate.

10   However, Cammerin Boyd remains the named Plaintiff.

11        Defendants raised an objection to Mr. Boyd as the named Plaintiff, but did not brief

12   the issue in their motion for summary judgment. Defendants did note that "their contentions

13   in support of their motion would be equally applicable to Mr. Boyd's estate or heirs, were

14   they named as plaintiffs in this case."

15

16        **A.     The lawsuit in the instant case cannot be dismissed for failure to substitute the Estate of Cammerin Boyd as Plaintiff, because Defendants did not follow the procedural requirements of Federal Rule of Civil Procedure 25.**

17

18

19        Fed.R.Civ.P. 25(a)(1) requires two affirmative steps in order to trigger the running of

20   the 90 day period. First, a party must formally suggest the death of the party upon the

21   record . . . Second, the suggesting party must serve other parties and nonparty successors

22   or representatives of the deceased with a suggestion of death in the same manner as

23   required for service of the motion to substitute. *Barlow v. Ground*, 39 F.3d 231, 233 (9th

24   Cir. 1994).

25        Regarding the second element, Defendants provided neither an assertion nor

26   evidence that they complied with the notice requirements of Rule 25. Thus, the action may

27   not be dismissed under Rule 25 for failure to substitute the Estate of Cammerin Boyd as

28   Plaintiff.

*U.S. District Court*
For the Northern District of California

**U.S. District Court**
For the Northern District of California

**B.      Pursuant to judicial authority to add or drop a party under Federal Rule of Civil Procedure 21, this Court orders the Estate of Cammerin Boyd to be substituted for the deceased Plaintiff, in order to avoid depriving the real party in interest, the Estate, of its claims, and to protect Defendants against a subsequent action which might otherwise be brought by the Estate if it were not so substituted.**

Rule 21 of the Federal Rules of Civil Procedure provides that "[p]arties may be dropped or added by order of the court on motion by any party or of its own initiative at any stage of the action and *on such terms as are just.*" Fed.R.Civ.P. 21. A court may invoke Rule 21 *sua sponte* to add a party during trial in order to cure a Rule 17 real party in interest defect. *Thor Power Tool Company v. Weintraub*, 791 F.2d 579 (7th Cir. 1986).

Rule 17 of the Federal Rules of Civil Procedure provides that, "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. Rule 17(a). While Rule 17 does not define who is a "real party in interest," it specifically lists an "executor" or an "administrator" as a party who "may sue in that person's own name without joining with him [or her] the party for whose benefit the action is brought." *Id.*

In the present case, Ms. Boyd was appointed executor and administrator of Mr. Boyd's Estate after his death. Ms. Boyd became a real party in interest in this lawsuit under Rule 17, once she was so appointed. Ms. Boyd has not filed a motion to substitute herself, in her capacity as executor and administrator, as the named Plaintiff.

Given Ms. Boyd's status as a "real party in interest" under Rule 17, and given the Court's authority to add a party "of its own initiative at any stage of the action and on such terms as are just" under Rule 21, the Court hereby orders the Estate of Cammerin Boyd to be substituted as the named Plaintiff in the lawsuit at bar. As established in Rule 17, this "substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Defendants have acknowledged that their arguments for summary judgment apply whether the Plaintiff is Mr. Boyd or Mr. Boyd's Estate.

The Court's order of substitution is "just" under Rule 21, because it avoids depriving the real party in interest (the Estate of Cammerin Boyd) of its claims, while it protects the Defendants against subsequent action by the party actually entitled to recover (the Estate

1    of Cammerin Boyd), and insures "that the judgment will have its proper effect as res

2    judicata," in accord with the purposes of Rule 17.

3
4    **III.    Defendants' motion for summary judgment is granted as to all of Plaintiff's claims, given Plaintiff's lack of admissible evidence as to all elements, or key elements, of each claim.**

5
6    Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

7    "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

8    admissions on file, together with the affidavits, if any, show that there is no genuine issue

9    as to any material fact and that the moving party is entitled to judgment as a matter of law."

10   Fed.R.Civ.P. 56(c).

11   A party moving for summary judgment who does not have the ultimate burden of

12   persuasion at trial (usually the defendant) has the initial burden of . . . showing that the

13   non-moving party does not have enough evidence of an essential element to carry its

14   ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies,*

15   *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

16   Once the moving party has satisfied its initial burden, "the non-moving party may not

17   rest upon mere allegations or denials of the adverse party's evidence, but instead must

18   produce admissible evidence that shows there is a genuine issue of material fact for trial."

19   *Id.* at 1102 (emphasis added). "Conclusory allegations . . . without factual support, are

20   insufficient to defeat summary judgment." *National Steel Corp. v. Golden Eagle Ins. Co.*,

21   121 F.3d 496, 502 (9th Cir. 1997). "The mere existence of a scintilla of evidence in support

22   of the non-moving party's position is not sufficient." *Id.* "If the evidence is merely colorable,

23   or is not significantly probative, then summary judgment may be granted." *Anderson v.*

24   *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (citations omitted).

25   "Credibility determinations, the weighing of the evidence, and the drawing of

26   legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a

27   motion for summary judgment." *Id.* at 255. The non-movant's evidence "is to be believed,

28   and all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* Where "the

inferences to be drawn (even from undisputed facts) . . . depend on the weight and

U.S. District Court

For the Northern District of California

1  credibility of the evidence . . . [these] are questions of fact for the jury to decide. *Id. See*

2  *also* Schwarzer, *supra*, at § 14:257.

3      "The district court need not examine the entire file for evidence establishing a

4  genuine issue of fact, where the evidence is not set forth in the opposing papers with

5  adequate references so that it could conveniently be found." *Carmen v. San Francisco*

6  *Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). *See also Orr v. Bank of America*,

7  285 F.3d 764, 774-75 (9th Cir. 2002).

8
9      **A.    Summary judgment is granted as to Plaintiff's disability discrimination
         claim under ADA Title II and Rehabilitation Act § 504, because Plaintiff
10        failed to provide evidence to establish any requisite elements, including
         that Defendant Officers excluded Mr. Boyd from the benefits of a public
11        program or service, or otherwise discriminated against him.**

12     "[The Ninth Circuit's] interpretation of Title II of the ADA applies equally to Section

13 504 of the Rehabilitation Act." *Bay Area Addiction Research and Treatment, Inc. v. City of*

14 *Antioch*, 179 F.3d 725, 730 (9th Cir. 1999). The language of the two statutes is "similarly

15 expansive" and "Congress has directed that the ADA and Rehabilitation Act be construed

16 consistently." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997), *cert. denied*, 524

17 U.S. 937 (1998).

18     Given the similar substance of the ADA and RA, this Court will address the elements

19 of ADA and RA claims together, as follows. To prove a violation of either the ADA Title II or

20 Rehabilitation Act Section 504, the Plaintiff must show that Cammerin Boyd: (1) was an

21 'individual with a disability'; (2) was either excluded from participation in or denied the

22 benefits of services, programs or activities, or was otherwise discriminated against;(3) was

23 'otherwise eligible' to receive the benefit; (4) the denial of benefits or discrimination was

24 solely by reason of his disability; and (5) the Defendant Officers, Oakland Police

25 Department, and City of Oakland receive federal funding (for the Rehabilitation Act claim),

26 or constitute a public entity (for the ADA claim). *See Weinreich v. Los Angeles County*

27 *Metropolitan Transp. Authority*, 114 F.3d 976, 978 (9th Cir. 1997) (listing elements for

28 disability discrimination claims under Title II of the ADA and § 504 of the Rehabilitation Act);

*Zukle v. Regents of the University of California*, 166 F.3d 1041, 1045 (9th Cir. 1999)

**U.S. District Court**

For the Northern District of California

1    (applying a combined set of elements for plaintiff's disability discrimination claims under

2    Title II of the ADA and § 504 of the Rehabilitation Act).

3         In addition, in order to collect monetary damages in a failure to accommodate case,

4    the plaintiff must prove intentional discrimination, the standard for which is "deliberate

5    indifference" which this Court will treat as a sixth element for the purposes of this analysis.

6    *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

7         The analysis in the instant case hinges on the second element.

8         Under the Americans with Disabilities Act, "no qualified individual with a disability

9    shall, by reason of such disability, be excluded from participation in or be denied the

10   benefits of the services, programs, or activities of a public entity, or be subject to

11   discrimination by any such entity." 42 U.S.C. § 12132. "[T]he ADA defines *discrimination* as

12   a public accommodation treating a disabled patron the same as other patrons despite the

13   former's need for a reasonable modification." *Id.* at 1268-70.

14        In order to successfully oppose summary judgment, Plaintiff must produce

15   admissible evidence to establish a genuine issue of material fact as to whether the

16   Defendants excluded Mr. Boyd from the benefits of a public program or service, or

17   otherwise discriminated against him. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. To

18   this end, Plaintiff makes four assertions of proof. Pl. Opp. to SJ 6:4-6; 6:21-22; 8:25; 9:1-5.

19        First, Plaintiff asserts that Chief Word's deposition establishes a violation of disability

20   laws in that he "opined that it would not be reasonable or appropriate for an officer to take

21   away the transportation of a disabled person and leave him on the streets in a high crime

22   area." *See* Pl. Opp. to SJ at 5: 4-6. Plaintiff cites to page 76, lines 1-21 of Chief Word's

23   deposition. Plaintiff's use of the word "opined" is accurate. The cited statements, read in

24   context, were made in response to a hypothetical scenario posed by Plaintiff's counsel.

25   Chief Word's conjecture does not constitute admissible evidence. Therefore, Plaintiff's first

26   offer of proof fails to provide evidentiary support for Plaintiff's allegation that Defendant

27   Officers excluded Mr. Boyd from the benefits of a public program or service, or otherwise

28   discriminated against him.

**U.S. District Court**
For the Northern District of California

1    Second, Plaintiff asserts that Captain Loman's deposition testimony provides

2  evidentiary support for her disability discrimination claim, citing to his deposition as follows:

3  "p. 46: 22-25; p. 47:24-25; p. 48:1-25; p. 49:1-17; p. 50:21-25; p. 51:1-20." *See* Pl. Opp. to

4  SJ 5: 11-12. The cited sections from Captain Loman's deposition, like Chief Word's

5  deposition, are inadequate as evidence of discrimination against Mr. Boyd.  Page 46, lines

6  22-25 set forth a question posed by Plaintiff's counsel regarding the Oakland Police

7  Department's policies regarding strip searches, and has nothing to do with disability

8  discrimination. The remaining cited statements represent Captain Loman's conjectural

9  responses to questions about a hypothetical scenario posed by Plaintiff's counsel, which do

10  not constitute admissible evidence that the Defendant Officers excluded Mr. Boyd from the

11  benefits of a public program or service, or otherwise discriminated against Mr. Boyd.

12    Third, Plaintiff's counsel points to Cammerin Boyd's declaration as evidence of

13  disability discrimination. As established above, Mr. Boyd's declaration is inadmissible

14  hearsay under FRE 802, and as such it cannot serve as proof that the Defendant Officers

15  either excluded Mr. Boyd from the benefits of a public program or service, or otherwise

16  discriminated against Mr. Boyd.

17    Fourth, Plaintiff's counsel asserts that the testimony of "others" establishes that Mr.

18  Boyd was discriminated against. Pl. Opp. to SJ 6: 5-6. This reference to the testimony of

19  "others" is lacking in specific page numbers, line numbers, as well as the names of the

20  witnesses. The lack of adequate reference under *Carmen*, *supra*, compels this Court to find

21  that Plaintiff has not provided evidence sufficient to raise a triable issue of material fact.

22  Nevertheless, for the sake of completeness this Court will assume that Plaintiff refers to the

23  alleged witnesses described by Plaintiff's attorney in paragraphs two, three, and four of the

24  Boyd Declaration.  However, as discussed in the section on admissibility above, the

25  testimony of these alleged witnesses is inadmissible hearsay under FRE 802, and no

26  hearsay exception applies to render their statements otherwise admissible.

27    Each of Plaintiff's four offers of proof fails to provide any admissible evidence to

28  establish that Defendant Officers excluded Mr. Boyd from a public program or service, or

that they otherwise discriminated against him. Without evidence to establish this

foundational element of the claim, Plaintiff cannot prevail. Therefore, the Court grants

Defendants' motion for summary judgment as to Plaintiff's disability discrimination claim.

**B.      Defendant's motion for summary judgment is granted as to Plaintiff's §1983 claim against Defendant Officers, because although Plaintiff provided evidence to establish that the officers acted under color of law in ticketing Mr. Boyd and towing his car, Plaintiff failed to produce admissible evidence to establish that Defendant Officers violated Mr. Boyd's rights.**

Section 1983 provides that,

> Every person who, under color of any statute . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

In order to prove a violation of Section 1983, a plaintiff must establish:

"(1) that the conduct complained of was committed by a person acting under color of state

law; and (2) that the conduct deprived [the plaintiff] of rights, privileges, or immunities

secured by the Constitution or laws of the United States."  *Johnson v. Hawe*, 388 F.3d 676,

680 (9th Cir. 2004).

**1.      Plaintiff's Exhibit A, the traffic citation, and Exhibit B, the towing receipt, establish that Defendant Officers acted "in their official capacity" when they ticketed Mr. Boyd and towed his car, thus establishing that they acted "under color of law" for the first element of the Plaintiff's § 1983 claim.**

"Misuse of power, possessed by virtue of state law and made possible only because

the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state

law." *U.S. v. Classic*, 313 U.S. 299 (1941).  Officers act under color of law when they

perform their actions in an official capacity. *Screws v. U.S.*, 325 U.S. 91 (1945).

Plaintiff's admissible evidence in support of the § 1983 claim against Defendant

Officers consists of Plaintiff's Exhibits A and B. *See* Pl. Opp. to SJ, Exhibits A-B.  Exhibit A

is a traffic citation issued to Mr. Boyd, apparently on July 21, 2002 (as discussed above, it

is nearly illegible). The citation, as an official departmental document, represents an

U.S. District Court
For the Northern District of California

U.S. District Court
For the Northern District of California

1   exercise of official police power that was applied to Cammerin Boyd, which is sufficient to

2   establish that the Defendant Officers "acted under color of state law." Similarly, Exhibit B,

3   the towing report, establishes that the towing of Mr. Boyd's car was an official action of the

4   Oakland Police Department, and thus was an action undertaken "under color of state law."

5   Thus, the first element of the two-element test for the Plaintiff's § 1983 claim is met.

6

7               **2.      Plaintiff failed to provide admissible evidence to satisfy element
                          two of a § 1983 claim: that Mr. Boyd was deprived of his Fourth
                          and Fourteenth Amendment rights.**

8

9       "A person deprives another 'of a constitutional right, within the meaning of section

10  1983, if he does an affirmative act, participates in another's affirmative acts, or omits to

11  perform an act which he is legally required to do that causes the deprivation of which [the

12  plaintiff complains].'" *Redman v. County of San Diego*, 942 F2d 1435, 1443-44 (9th Cir.

13  1991) (emphasis and citation omitted).

14      This Court construes Plaintiff's Complaint to allege the following claims of violations

15  of his rights under § 1983 against Officers Sena and McQuinn: (1) violation of Fourth

16  Amendment rights, specifically (I) excessive force, (ii) unreasonable search and seizure,

17  and (iii) unlawful arrest; (2) violation of Fourteenth Amendment rights; (3) violation of rights

18  under the ADA; (4) violation of rights under Section 504 of the Rehabilitation Act. The ADA

19  and Rehabilitation Act claims are addressed in the section on disability discrimination,

20  above. The remaining claims are each addressed in turn below.

21          **(I)     Fourth Amendment**

22          **(a)     Excessive Force**

23      "[A]ll claims that law enforcement officers have used excessive force--deadly or not--

24  in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be

25  analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than

26  under a [Fourteenth Amendment] 'substantive due process' approach." *Graham v. Connor*,

27  490 U.S. 386, 395 (1989). "[S]ubjective concepts like 'malice' and 'sadism' have no proper

28  place in that inquiry." *Id.* at 399.

**U.S. District Court**
For the Northern District of California

1    "Determining whether the force used to effect a particular seizure is 'reasonable'

2    under the Fourth Amendment requires a careful balancing of 'the nature and quality of the

3    intrusion on the individual's Fourth Amendment interests' against the countervailing

4    governmental interest at stake." *Id.* at 396. *See also Blanford v. Sacramento County*, 406

5    F.3d 1110 (2005).

6    "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the

7    question is whether the officers' actions are 'objectively reasonable' in light of the facts and

8    circumstances confronting them, without regard to their underlying intent or motivation."

9    *Graham*, 490 U.S. at 397. Relevant facts and circumstances include "the severity of the

10    crime at issue, whether the suspect poses an immediate threat to the safety of the officers

11    or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

12    *Id.* at 396.

13    Plaintiff alleges that Defendant Officers treated Mr. Boyd with excessive force in

14    dragging him from his car, forcing him to walk on his prosthetics without the use of his

15    assistive devices, publicly strip searching him, and throwing him into their squad car with

16    his hands in handcuffs behind his back. As evidence of these allegations, Plaintiff makes

17    no specific offer of evidence in the opposition papers; however, counsel appears to point

18    generally to the following evidence as proof of all allegations regarding all claims:

19    Cammerin Boyd's declaration; Marylon Boyd's declaration; a copy of Mr. Boyd's

20    government tort claim with the City of Oakland; Chief Word's deposition; Captain Loman's

21    deposition; off-the-record testimony of "other witnesses;" and statements of "other plaintiffs

22    in the class action" (the unrelated case in another courtroom that alleges police

23    misconduct). *See e.g.* Pl. Opp. to SJ 5:1-3, 6:1-2.

24    These offers of evidence have been analyzed above, either in the section on

25    admissibility or under the Plaintiff's disability discrimination claim, and the Court finds that

26    each of these offers of proof fails to provide admissible evidentiary support to establish the

27    basic facts alleged by Plaintiff regarding Defendant Officers' conduct on July 23, 2002.

28    Further, this offer of proof fails to provide admissible evidence to establish that the officers'

U.S. District Court
For the Northern District of California

1  alleged conduct was unreasonable in light of the facts and circumstances confronting them,

2  which is a requisite element of Plaintiff's excessive force claim.

3      As established above, Plaintiff had ample time in which to produce witnesses or

4  other admissible evidence of the alleged incident, having been granted three continuances

5  (totaling 16 months) by this Court. Given Plaintiff's failure to provide admissible evidence in

6  support of her allegations, despite ample opportunity to do so, the Court hereby grants

7  Defendants' motion for summary judgment as to Plaintiff's excessive force claim.

8

9              **(b)    Unreasonable Search and Seizure**

The test of reasonableness under the Fourth Amendment is not capable of
10  precise definition or mechanical application. In each case it requires a
balancing of the need for the particular search against the invasion of
11  personal rights that the search entails. Courts must consider the scope of the
particular intrusion, the manner in which it is conducted, the justification for
12  initiating it, and the place in which it is conducted.

13  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

14      In *Bell*, inmates at a federal prison sued under § 1983 for violation of their Fourth

15  Amendment rights to be free of unreasonable searches and seizures. *Id.* at 520. At issue

16  was the prison's policy of conducting post-visitation strip searches of inmates, including a

17  visual inspection of inmates' body cavities. *Id.* at 550, 558.

18      In conducting the balancing test, the Supreme Court in *Bell* stated that it does "not

19  underestimate the degree to which these searches may invade the personal privacy of

20  inmates." *Id.* at 560. Nevertheless, "[a] detention facility is a unique place fraught with

21  serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all

22  too common an occurrence." *Id.* at 559. The Court in *Bell* concluded that "under the

23  circumstances, we do not believe that these searches are unreasonable," and held that

24  "these searches do not violate that Amendment." *Id.* at 558.

25      The Plaintiff alleges that Mr. Boyd was pulled over without justification or basis,

26  dragged from his car, made to walk on his prosthetic legs without assistive devices,

27  subjected to a public strip search that included a body cavity search, and was forcibly

28  thrown into the back of a squad car while his car was searched. Boyd Declaration ¶ 5 at 3:

18-22. However, as established above, the Plaintiff failed to provide any admissible

U.S. District Court
For the Northern District of California

1  evidence to support these allegations. Given that allegations alone are insufficient to defeat

2  summary judgment, the Defendant's motion for summary judgment is granted as to the

3  Plaintiff's unreasonable search and seizure claim.

### (c)    Unlawful Arrest

5      To establish a claim for Unlawful Arrest under § 1983, a plaintiff must prove: (1) that

6  Defendant Officers arrested Mr. Boyd without a warrant, (2) that Mr. Boyd was actually

7  harmed, and (3) that Defendant Officers' conduct was a substantial factor in causing Mr.

8  Boyd's harm. *Dubner v. City & County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001).

9  A plaintiff "can make a prima facie case simply by showing the arrest was made without a

10  valid warrant. At that point, the burden shifts to the defendant to provide some evidence

11  that the arresting officers had probable cause for a warrantless search." *Id.* at 965.

12      An investigatory stop becomes an arrest if, under "the totality of the circumstances,"

13  the situation is "sufficiently coercive that no distinction can rightly be drawn between that

14  seizure and an arrest."  *U.S. v. Baron*, 860 F.2d 911, 914-16 (9th Cir. 1988). Under the

15  "totality of the circumstances", the court in *Baron* analyzed several factors to assess

16  whether the level of coerciveness reached the point at which the stop was indistinguishable

17  from an arrest: whether the police left the individual on the street or moved him to a police-

18  controlled area; whether the police had drawn weapons; whether the individual was

19  handcuffed or otherwise controlled; whether the length of the stop was long (20-40

20  minutes) or short (5-10 minutes); and whether there was a societal power differential

21  between the officers and the individual, for example, based on ethnicity or gender. *Id.* at

22  914-16.

23      Here, Plaintiff's relevant allegations are that the Defendant Officers stopped Mr.

24  Boyd "without any justification or basis" and "forcefully threw" him into the back of the police

25  car; that they had drawn their guns on him; that he was handcuffed; that he sat in the back

26  of the police car for over 30 minutes; and there may have been a power differential based

27  on ethnicity. (Mr. Boyd was African American; the evidence does not establish the

28  ethnicities of the Defendant Officers, but the Plaintiff alleges racial discrimination.) These

factors, if proven, would weigh in favor of a finding that Mr. Boyd was under arrest.

1   However, as established above, Plaintiff failed to provide any admissible evidence to

2   support the allegations. Given that allegations alone are insufficient to defeat summary

3   judgment, the Defendants' motion for summary judgment is hereby granted as to the

4   Plaintiff's claim of unlawful arrest.

5                    **(ii)      Fourteenth Amendment**

6        "[A]ll claims that law enforcement officers have used excessive force--deadly or not--

7   in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be

8   analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than

9   under a [Fourteenth Amendment] 'substantive due process' approach." *Graham v. Connor*,

10  490 U.S. 386, 395 (1989). The Fourteenth Amendment analysis applies to the incarceration

11  setting. *Id.*

12       As discussed above, Plaintiff alleges that Defendant Officers used excessive force

13  while Plaintiff was stopped, questioned, searched, and detained for 30 minutes in the

14  Officers' squad car. Based on the Plaintiff's allegations, the stop by Defendant Officers was

15  an investigatory stop or an arrest. There were neither allegations nor evidence that Mr.

16  Boyd was incarcerated. Under *Graham*, the appropriate standard for an investigatory stop

17  or arrest is the Fourth Amendment standard, rather than a Fourteenth Amendment due

18  process analysis. The Court thus grants summary judgment as a matter of law as to the

19  Plaintiff's Fourteenth Amendment claim.

20       The Fourth Amendment analysis of Plaintiff's excessive force claim is addressed,

21  and summarily adjudicated, in the Fourth Amendment Excessive Force section above.

22

23       **C.     Summary judgment is granted as to all of Plaintiff's § 1983 *Monell*
             claims against the Oakland Police Department and City of Oakland
24           because Plaintiff failed to establish the existence of a policy,
             custom, pattern or practice—and because Plaintiff failed to
25           provide admissible evidence to establish that Defendant Officers
             violated Mr. Boyd's rights.**
26

27            Local governing bodies . . . can be sued directly under § 1983 for
              monetary, declaratory, or injunctive relief where . . . the action that is
28            alleged to be unconstitutional implements or executes a policy
              statement, ordinance, regulation, or decision officially adopted and
              promulgated by that body's officers. Moreover . . . local governments

U.S. District Court

For the Northern District of California

1
2

> . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels.

3    *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978).

4    In the instant case, the Court has found no rights violation, and without an underlying

5    violation of rights, the Plaintiff's derivative *Monell* allegation is baseless. This alone is more

6    than sufficient grounds for the Court to grant the Defendant's motion for summary judgment

7    against the Plaintiff's *Monell* claim.

8    Even assuming *arguendo* that there were an underlying rights violation in the instant

9    case, Plaintiff failed to establish the existence of a policy or practice, custom, or pattern of

10   conducting or condoning public strip searches. Without such evidence, the Plaintiff's *Monell*

11   claim cannot survive summary judgment.

12   Here, Plaintiff's first attempt to provide admissible evidence of the requisite policy or

13   practice is to ask the Court "to take Judicial Notice of the current class action now pending

14   in the Northern District for field strip searches." Pl. Opp. to SJ at 2: 7-9. Under FRE 201,

15   judicial notice may be taken of adjudicative facts that are in issue in a case if those

16   adjudicative facts are not subject to reasonable dispute because they are "generally known"

17   or "capable of accurate and ready determination by resort to sources whose accuracy

18   cannot reasonably be questioned." *Korematsu v. U.S.*, 584 F.Supp. 1406, 1414 (N.D. Cal.

19   1984); Fed.R.Evid. 201.

20   The existence of another lawsuit in which an alleged custom, policy or practice is at

21   issue cannot be said to be an adjudicative fact that is "not subject to reasonable dispute."

22   Rather, this alleged fact is very much in dispute. Thus, this Court declines Plaintiff's request

23   to take judicial notice of the indicated legal action under FRE 201, for the purposes of

24   establishing a policy, custom, or practice for the purposes of Plaintiff's *Monell* claim.

25
26
27
28

U.S. District Court
For the Northern District of California

1    Second, as evidence of a policy or practice, the Plaintiff offers Chief Word's

2    deposition testimony and a copy of the Oakland Police Department's policies regarding

3    searches. Pl. Opp. To SJ at 4: 11-25.[11]

4    Plaintiff asserts that,

5            Chief Word testified that the Strip Search policy in effect at the time
             was flawed in that it was interpreted as allowing officers to conduct
6            strip searches on the public streets without clear guidelines. The
             policy in effect is attached as Exb.[4], to Exb.D, Trans. p.32:11-15
7            herein. He testified that the problem with the policy was that officers
             did not understand that removing a suspect's clothing in a public area
8            constituted a strip search.

9    Pl. Opp. to SJ at 4: 11-25.

10   The Plaintiff's cited page number and lines were not accurate. However, a review of

11   the deposition transcript revealed that what Chief Word stated was not, as the Plaintiff

12   characterized it, that the department's policy was flawed and that officers did not

13   understand that removing a suspect's clothing in the street was a strip search. Rather,

14   Chief Word stated that after receiving "two or three" complaints of inappropriate public strip

15   searches from the head of the Citizens Police Review Board, he ordered the head of

16   Internal Affairs to clarify the departmental policy. Exhibit D 18:3 through 21:14. Chief Word

17   stated that he did so because he thought that "[n]ot [every officer] fully understood that if

18   you altered the outer clothing to look at undergarments, not even to look at the skin

19   underneath the undergarments, but just look at the undergarments, that by law constituted

20   a strip search." Exhibit D, 21: 7-14.

21   Chief Word explained that the department clarified its written policy on strip searches

22   by adding to both the definition of a strip search and to criteria for officers to consider when

23   _____

     [11]   Plaintiff asserts that the existence of a policy or practice of conducting public strip searches is
24   supported by other evidence, but does so without citing to the record. For example, Plaintiff states that Defendants'
     interrogatory responses asserting that there is no policy or practice of public strip searches "is clearly refuted by
     the testimony of Chief Word, Captain Loman, Cammerin Boyd, and the other plaintiffs in the class action," but the
25   Plaintiff offers no reference to the record. Pl. Opp. to SJ at 6:1-6.

26          Failure to cite to a specific location of evidence in the file "alone warrants exclusion of the evidence." *Orr
     v. Bank of America*, 285 F.3d 764, 774-75 (9th Cir. 2002). "Judges need not paw over the files without assistance
27   from the parties." *Id.* at 775.

28          Despite Plaintiff's lack of citations to the record and mis-citations to the record, this Court endeavored to
     locate what appeared to be the relevant sources in the record for the Plaintiff's assertions about the evidence. The
     material that the Court did locate and review for support of the Plaintiff's assertions and claims is analyzed herein.

1   they thought that a strip search in the field was justified. *See* Exhibit D 21:15-24. He also

2   stated that he didn't recall the exact language of the policy, but that strip searches were to

3   be conducted at the jail, unless an officer had a documented justification for conducting the

4   search in the field. *See* Exhibit D 25: 12-24.

5          The full wording of the department's policy can be found in Plaintiff's Exhibit 4, which

6   is a copy of the written policy, acknowledged by Chief Word in his deposition. *See* Exhibit 4

7   within Exhibit D; Exhibit D 32:11.15. This policy makes it clear that a strip search "must be

8   conducted in a private area where it cannot be observed by persons not participating in the

9   search" and inter alia, the suspect must be under arrest and ultimately booked; the offense

10  must involve weapons, controlled substances, or violence; and the search must be

11  conducted by an officer of the same sex as the suspect. *See* Exhibit 4 within Exhibit D, the

12  page entitled "Oakland Police Department, Searching Persons, 30 Sept 98, Index No. I-

13  0.2."

14         A reading of Chief Word's deposition and the department's official written policy

15  reveals that a strip search is allowed only under certain circumstances which must be

16  justified and documented by the officers, and must follow specific guidelines which include

17  that it "must be conducted in a private area where it cannot be observed by persons not

18  participating in the search"—meaning *not in public*. Both the deposition testimony and the

19  written policy support the conclusion that the department had an official policy *against*

20  public strip searches. By asserting otherwise, the Plaintiff mischaracterizes the evidence.

21         As to the existence of a pattern, custom, or practice of condoning or allowing public

22  strip searches, Chief Word's statements and Exhibit 7, the newspaper article discussed in

23  that deposition, are the relevant sources. Contrary to Plaintiff's assertions, Chief Word at

24  his deposition refutes the claim that the department had any such pattern, custom, or

25  practice. In fact, he testified that when two or three complaints of inappropriate strip

26  searches were received, the department acted immediately to clarify its policy regarding

27  strip searches and ensure that officers understood that policy. Contrary to Plaintiff's

28  assertions, this testimony is evidence that the department had a custom, pattern, and

practice *against* public strip searches.

U.S. District Court

For the Northern District of California

1    Plaintiff also asserts that the newspaper article, in which Chief Word was interviewed

2 regarding strip searches, constitutes an acknowledgment by Chief Word that "there was a

3 longstanding and problematic practice of conducting strip searches in the field."[12]  Pl. Opp.

4 to SJ at 4: 22-23 (citing to Exhibit 7 within Exhibit D).

5    "[N]ewspaper articles have been held inadmissible hearsay as to their content..."

6 *Larez v. City of Los Angeles*, 946 F.2d 630, 642-43 (9th Cir. 1991). A statement is not

7 hearsay if it is the party's own statement in either an individual or a representative capacity.

8 Fed.R.Evid. 801(d)(2).

9    The article stated the following, in relevant part.

10         A new strip search policy drafted last week directs officers to take
           suspects to private areas—such as the jail or restrooms—if they want
11         to check them thoroughly, Word said. "You can't search somebody in
           the street," he said. "I don't think that was clear to the rank and file . .
12         . I don't think the general public understands when we say strip
           search. They think we took all his [Cammerin Boyd's] clothes off on
13         the street, and that's not the case."

14 Plaintiff's Exhibit 7 within Exhibit D.

15    Is the newspaper article admissible as evidence? In Chief Word's deposition, Ms.

16 Boyd asked whether he made the above statements to the reporter, Henry Lee, and Chief

17 Word replied that he did. Exhibit D, 71: 18-24. Given Chief Word's admission that these

18 were his words, these quotes from the newspaper article are admissible under FRE

19 801(d)(2) as an admission of a party opponent.

20    In his deposition, prompted by questions from Ms. Boyd, Chief Word explained his

21 statements in the newspaper article. *See e.g.* Exhibit D 72:3-7, 24-25; 73: 1-2.  Ms. Boyd

22 asked, referring to the quote that Cammerin Boyd's clothing was not removed, "[w]hat did

23 you base that information on to make that quote?" Id. at 72: 8-9. Chief Word replied "[m]y

24 discussions with my staff. And what they told me actually occurred was not some full-blown

25

26         [12]  Plaintiff also cites to Chief Word's deposition, Exhibit D, as supporting this assertion. In Chief Word's
    deposition, Ms. Boyd asked if he would agree that there was a long-standing and problematic practice of
    conducting field strip searches. Exhibit D 68:8-10. Chief Word replied, "I would say I agree that there was a
27  misunderstanding among many officers," referring to his earlier statement that some officers did not understand
    that looking only at a suspect's undergarments—without removing any clothing or looking at the skin underneath
28  the undergarments—still constitutes a strip search under the law, as discussed above. *Id.* Plaintiff's
    characterization of Chief Word's statements is not borne out by an examination of those statements, and what he
    actually said does not provide evidence to support Plaintiff's assertion.

U.S. District Court
For the Northern District of California

1   stripping off of clothes and searching the body." *Id.* at 72:10-12. As discussed above, in the

2   section on admissibility, Chief Word's statements actually refute the allegation that

3   Cammerin Boyd was publicly strip searched. Chief Word's testimony goes on to state that

4   the department had begun an investigation into the allegations, and had begun a review

5   and revision of its policy relating to searches. As argued above, and contrary to the

6   assertions of Plaintiff, this testimony is evidence *against* the existence of a custom,

7   practice, or pattern of condoning public strip searches.

8         In summary, an examination of Plaintiff's offer of proof reveals either that what is

9   asserted is not evidence, or that Plaintiff mischaracterizes what constitutes evidence. The

10   Court cannot take judicial notice of a fact at issue in another proceeding to serve as

11   evidence of the same matter at issue in the present proceeding. Nor do Chief Word's

12   deposition testimony, the departmental policy, or the newspaper article provide support for

13   the Plaintiff's allegation that the department and city had a policy, pattern, custom, or

14   practice of conducting or condoning public strip searches. This leaves Plaintiff with

15   allegations alone, which are insufficient to survive summary judgment.

16         Plaintiff failed to provide evidence to support allegations that Defendant Officers

17   actually violated Mr. Boyd's rights. With no proof of an underlying rights violation, Plaintiff's

18   derivative *Monell* claim is baseless. In addition, given the lack of evidence of a policy or

19   practice, the Defendants' motion for summary judgment is granted as to Plaintiff's § 1983

20   *Monell* claim against Defendants Oakland Police Department and City of Oakland.

21

22         **D.    Defendants' motion for summary judgment is granted as to Plaintiff's**
          **Conspiracy claim because Plaintiff provided neither argument nor**
23         **evidence to defeat summary judgment on this claim.**

24         In order to establish a prima facie claim of Conspiracy by Defendants, Plaintiff must

25   establish all of the following elements: (1) a conspiracy; (2) for the purpose of depriving,

26   either directly or indirectly, any person or class of persons equal protection of the laws; (3)

27   an act in furtherance of the conspiracy; or (4) injury.

28         Plaintiff's motion in opposition to summary judgment points to no admissible

     evidence regarding the Conspiracy claim, nor does Plaintiff's motion even make any

**U.S. District Court**
For the Northern District of California

1   argument in favor of this claim. Given that Plaintiff failed to provide any evidence to support

2   the Conspiracy claim, summary judgment as to the claim of Conspiracy is granted.

3

4       **E.      Summary judgment is granted as to Plaintiff's Negligence claim**
          **because Plaintiff failed to provide any evidence or argument to defeat**
5         **summary judgment on this claim.**

6       In order to establish a prima facie claim of Negligence by the Defendants, Plaintiff

7   must establish all of the following elements: (1) the Defendants had a legal duty to conform

8   to a standard of conduct to protect the Plaintiff, (2) the Defendant failed to meet this

9   standard of conduct, (3) the Defendant's failure was the proximate or legal cause of the

10  resulting injury, and (4) the Plaintiff was damaged. *Ladd v. County of San Mateo*, 12

11  Cal.4th 913, 917 (1996). Under the standards for summary judgment, Plaintiff must provide

12  admissible evidence sufficient to raise a triable issue of material fact in order to survive

13  summary judgment. Given that Plaintiff failed to provide any evidence to support this claim,

14  summary judgment as to the claim of Negligence is thus granted.

15

16      **F.      Summary judgment is granted as to Plaintiff's claim of Assault and**
          **Battery because Plaintiff provided no evidence to raise a genuine issue**
          **of material fact to defeat summary judgment on this claim.**
17

18      To establish a claim of Assault and Battery, Plaintiff must prove that: (1) Defendant

19  Officers touched Mr. Boyd with the intent to harm or offend him, (2) Mr. Boyd did not

20  consent to the touching, and (3) Mr. Boyd was harmed or offended by Defendant Officers'

21  conduct. *Ashcraft v. King*, 228 Cal.App.3d 604, 611 (1991). Where a police officer is the

22  defendant, the plaintiff must also prove unreasonable force as an additional element of

23  these claims. *Edson v. City of Anaheim*, 63 Cal.App. 4th 1269, 1272 (1998).

24      In Plaintiff's opposition to summary judgment, the closest the Plaintiff came to

25  arguing or identifying the evidence in support of the Assault and Battery claim was in the

26  statement of facts section of Plaintiff's brief. This section states that Mr. Boyd told his

27  attorney "how the officers humiliated him, used excessive force, and assaulted him by

28  doing a body cavity search on him" in public. Pl. Opp to SJ at 4: 4-5. However, there is no

    citation to any admissible evidence. Plaintiff must provide admissible evidence sufficient to

1    raise a triable issue of material fact in order to survive summary judgment. Mere allegations

2    are not sufficient. Given that Plaintiff failed to provide any admissible evidence to support

3    the Assault and Battery claim, summary judgment as to that claim is granted.

4

5    **G.    Summary judgment is granted as to Plaintiff's claims of Intentional and**

6    **Negligent Infliction of Emotional Distress because California's survivor**
     **statute bars a deceased plaintiff's successor in a lawsuit from**

7    **recovering emotional distress damages, and because Plaintiff failed to**
     **provide admissible evidence to establish a genuine issue of material**
     **fact as to the requisite elements.**

8

9        To prevail on a claim for Intentional and Negligent Infliction of Emotional Distress,

10   Plaintiff must establish: (1) outrageous conduct by the defendants; (2) intent to cause or

11   reckless disregard of the probability of causing emotional distress; (3) severe emotional

12   suffering; and (4) actual and proximate causation of the emotional distress. *Agarwal v.*

13   *Johnson*, 25 Cal.3d 932, 946 (1979), *overruled on other grounds*, *White v. Ultramar*, Inc.,

14   21 Cal.4th 563 (1999).

15       The California survivor statute, section 377.34 of the Code of Civil Procedure, bars

16   successors in a lawsuit from recovering damages for a deceased plaintiff's emotional

17   distress. Cal.Code.Civ. Proc § 377.34.

18       Cammerin Boyd filed suit on July 21, 2003, and died of causes unrelated to this

19   lawsuit in May of 2004. Pursuant to California Code of Civil Procedure section 377.34, the

20   Estate of Cammerin Boyd—which is the successor to Mr. Boyd and the substituted Plaintiff

21   in this case—may not recover damages for any alleged pain and suffering or emotional

22   distress experienced by Cammerin Boyd before his death. Therefore, Plaintiff's claims of

23   Intentional and Negligent Infliction of Emotional Distress are barred by section 377.34.

24   Moreover, Plaintiff failed to provide admissible evidence to establish a genuine issue of

25   material fact regarding the requisite elements in order to survive summary judgment. Thus,

26   this Court grants Defendant's motion for summary judgment as to Plaintiff's state law

27   claims of Intentional and Negligent Infliction of Emotional Distress.

28

**U.S. District Court**
For the Northern District of California

U.S. District Court
For the Northern District of California

1     Mere allegations are insufficient to survive summary judgment, which provides

2 another basis upon which this Court grants the Defendant's motion for summary judgment

3 as to the Plaintiff's claim for Intentional and Negligent Infliction of Emotional Distress.

4
5     **H.     Summary judgment is granted as to Plaintiff's cause of action for False Arrest and False Imprisonment because Plaintiff provided no admissible evidence to demonstrate a genuine issue of material fact sufficient to defeat summary judgment on this claim.**

6
7     "False arrest and false imprisonment are not separate torts. False arrest is but one

8 way of committing a false imprisonment, and they are distinguishable only in terminology."

9 *Collins v. City & County of San Francisco*, 50 Cal.App.3d 671, 673 (1975). To establish a

10 claim of false arrest or false imprisonment, Plaintiff must prove: (1) Defendants intentionally

11 deprived Mr. Boyd of his freedom of movement by use of physical barrier, force, or threat of

12 force, or other unreasonable duress, (2) without Mr. Boyd's consent, (3) which harmed Mr.

13 Boyd, and (4) that the harm was substantially caused by the Defendants' conduct. *Fermino*

14 *v. Fedco, Inc.*, 7 Cal.4th 701, 715-16 (1994).

15     Here, Plaintiff's attorney argues that "the Fourth Amendment prohibits strip searches

16 of persons arrested for minor offenses . . . In this case Mr. Boyd was falsely cited, placed

17 under arrest and strip search[ed] for minor traffic violations alleged as 'not having a driver's

18 license', 'not having insurance' and 'not having registration.'" Pl. Opp. To SJ at 7: 18-23.

19 Counsel also asserts that the evidence is disputed as to whether Defendant Officers had

20 "probable cause" to stop Mr. Boyd. *Id.* at 24.

21     The only admissible evidence in support of Plaintiff's false arrest and false

22 imprisonment claim are Plaintiff's Exhibits A and B, discussed above, which are

23 respectively a traffic citation and a towed vehicle report. *See* Pl. Opp. to SJ, Exhibits A-B.

24 These documents provide corroborating evidence for the assertion that Cammerin Boyd

25 was cited by the police and his car towed. However, they do not show that Mr. Boyd was

26 mistreated or treated unreasonably by police. Despite ample time for discovery, Plaintiff

27 failed to produce any witnesses or admissible evidence to that end. Thus, Plaintiff's counsel

28 has failed to fulfill the requisite elements for Plaintiff's claim of False Arrest and False

Imprisonment.

1    Given that mere allegations are insufficient to establish a genuine issue of material

2    fact in summary judgment, this Court hereby grants Defendants' motion for summary

3    judgment as to Plaintiff's state law Tort claim of False Arrest and False Imprisonment.

4                                          **Order**

5    For all the above reasons, Defendants' motion for summary judgment is hereby

6    granted. Judgment on all causes of action shall be entered for Defendants. Plaintiff shall

7    take nothing on its complaint. The clerk shall close the file.

8    IT IS SO ORDERED.

9

10   DATED: October 17, 2006

11   _____

12                                    James Larson
                                      Chief Magistrate Judge

13

14   G:\JLALL\CHAMBERS\CASES\CIVIL\03-3391\ord-grant # 49.wpd

**U.S. District Court**
For the Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28